**In re Roger G. ROBINSON & Zelda R. Robinson, Debtors.**

**First National Bank of Jasper, Plaintiff,**

v.

**Roger G. Robinson & Zelda R. Robinson, Defendants.**

**Bankruptcy No. 95–71118–TBB–7. Adversary No. 96–00525.**

United States Bankruptcy Court, N.D. Alabama, Southern Division.

Sept. 29, 1999.

---

David Hood, Jasper, AL, for plaintiff.

Eric J. Breithaupt, Birmingham, AL, for debtor/defendant.

### MEMORANDUM OPINION

THOMAS B. BENNETT, Bankruptcy Judge.

#### I. Background

##### A. The Excepted Obligations

The bankruptcy of Roger G. and Zelda R. Robinson (collectively the Robinsons) is the result of their failed chicken raising business and succumbing to the enticements of others to join the ranks of those who protest against governmental actions

by refusing to pay taxes owed. When the Robinsons' joint case under Chapter 13 of the Bankruptcy Code, 11 U.S.C.S. § 1301 *et seq.*, proved unsuccessful, its conversion to one under Chapter 7, 11 U.S.C.S. § 701 *et seq.*, followed.

Shortly after the conversion, this fight over the scope of the discharge of debts began when the First National Bank of Jasper (Bank) commenced an adversary proceeding against the Robinsons to have excepted from discharge two loan obligations. One was used to purchase a 1994 Honda Civic (Honda Obligation). This contract was executed by only Mr. Robinson. The other agreement was entered into by Mr. and Mrs. Robinson to enable them to purchase a 1994 GMC Sierra pickup truck (GMC Obligation). The basis on which the Bank sought to have these debts excepted from discharge was that each was obtained by use of false pretenses, false representations, or actual fraud within 11 U.S.C.S. § 523(a)(2)(A) (Law.Co-op.1997)'s ambit. Following a trial, judgment was rendered, excepting both the Honda Obligation and the GMC Obligation from the bankruptcy discharge which otherwise would have been accorded Mr. Robinson. For Mrs. Robinson, only the GMC Obligation was excepted from discharge.

The amounts determined to be non-dischargeable are sixteen thousand six hundred forty-two dollars and seven cents ($16,642.07) for the Honda Obligation and sixteen thousand five hundred forty-three dollars and eighty-three cents ($16,543.83) for the GMC Obligation. The judgment excepting these debts from discharge is final (the Judgment).

### B. The Parry

Following entry of the Judgment, the Bank started its collection efforts. It chose not to execute or levy against any tangible personal property in the Robinsons' possession. Instead, it focused its endeavors on what it perceived to be the valuable property: Mr. Robinson's wages.

Having selected the property from which it hoped to obtain payment of the Judgment, the Bank garnished the wages payable to Mr. Robinson by his employer, Altec Industries, Inc. (Altec). In response to the writ of garnishment, Altec has tendered in excess of four thousand four hundred sixty-eight dollars and ninety-eight cents ($4,468.98) to the Clerk of this Court. The Bank has not contested whether Mr. Robinson could avail himself of a procedural limit on the remedy of garnishment of his wages under state or federal law. This is to be differentiated from a claim to exempt property. Indeed, Mr. Robinson has never affirmatively sought use of either an Alabama or the federal statute which restrains the amount of an individual's earnings which may be taken by this statutory remedy. At best, the shielding of all but a percentage of his wages from the Bank's garnishment efforts is the result of his passive act of acceptance of that portion of his wages determined to be within the safe harbor from garnishment under either Alabama of federal law. Which one was used by Altec is not self-evident from the evidence before the Court.

### C. The Riposte

Mr. Robinson's reaction to the garnishment was his filing of a declaration of exemptions and a supplement. So far, Mrs. Robinson has not claimed any exemption to place her property outside the Judgment's grasp. This is most probably due to the Bank limiting its collection efforts to the garnishment of Mr. Robinson's wages. The circumscription of its collection efforts is predicated, in part, on the perception that the cost of obtaining possession and disposing of other properties of the Robinsons' would yield little, if any, monies to apply against the Judgment. Also, Mrs. Robinson does not have a source of income.

Although initially Mr. Robinson relied upon the statutory personal property exemption of three thousand dollars set forth in Ala.Code § 6–10–6 (1993) (State Person-

alty Exemption) to attempt to have monies paid by Altec to the Clerk as garnished funds further excluded from the garnishment process, he subsequently relinquished this justification for reclaiming these monies. His other thrust to prevent the Bank from acquiring any of his wages to satisfy the Judgment is made by reliance on the one thousand dollar exemption of Art. X, § 204 of the Alabama Constitution of 1901 (Constitutional Exemption). According to Mr. Robinson, the Constitutional Exemption allows him to shield from garnishment another one thousand dollars of his wages above and beyond that not already protected by federal and/or state limits on garnishment.[1] The practice of attaining the benefit of either Alabama's or the federal limit on garnishment procedure plus using the Constitutional Exemption to protect wages remaining subject to garnishment has been referred to as stacking by the Alabama courts.

When this constitutionally exempt sum is reduced below one thousand dollars due to, among other things, expenditures by the Robinsons for living expenses, Mr. Robinson argues he may reassert it to the extent necessary to replenish the sum to one thousand dollars. The Robinsons' position is the Constitutional Exemption may be asserted *ad infinitum* so long as the personal property exempted is below or, for permissible reasons under Alabama law, goes below one thousand dollars in value. It is alleged that this is the only way Mr. Robinson will be able to attain and retain the maximum amount of exempt property allowed by the Constitutional Exemption.

## D. The Foils

To demonstrate his entitlement to repetitively assert the Constitutional Exemption, Mr. Robinson presented the Bank and the Court with an inventory of personal property. The purpose of the inventory was to divulge what personal property he possessed and its value. Mr. Robinson also provided evidence of his income and expenses. He utilized his income and expense evidence for the purpose of illustrating how much the thousand dollar Constitutional Exemption is depleted by living expenses incurred between pay days.

At the hearing held by this Court, Mr. Robinson proved his gross monthly income to be three thousand three hundred seventy-nine dollars and fifty-one cents ($3,379.51), and his monthly income after withheld taxes, payment of health insurance, and a contribution to Altec's 401(k) plan to be two thousand twenty-two dollars and fifteen cents ($2,022.15). From this sum, he expends each month one thousand nine hundred thirty-nine dollars and thirty-three cents ($1,939.33).[2] On a weekly basis, Mr. Robinson expends on average, four hundred forty-seven dollars and fifty-four cents ($447.54). According to Mr. Robinson, this leaves for garnishment only eighty-two dollars and eighty-two cents per month ($82.82) before consideration of the Art. X, § 204 thousand dollar personal property exemption.[3]

1. As a result and despite Mr. Robinson's counsel presenting this case as one where no stacking of exemptions was asked for by Mr. Robinson, the fact is that that is what is being obtained, is in reality sought, and is what has to be resolved by this Court. Why this is so becomes apparent when one knows that certain restrictions which limited the Bank's garnishment efforts are not waivable by Mr. Robinson.

2. Although Mr. Robinson initially established monthly expenses of about one thousand nine hundred ninety-seven dollars and thirty-three cents ($1997.33), it became apparent that he had inadvertently deducted an expense for life

insurance in the amount of fifty-eight dollars ($58.00) two times. It was deducted automatically from his paycheck to establish his take home pay of $2022.15 and was similarly scheduled as a separate expense on the updated Bankruptcy Schedule J itemization of expenses. This expense item and its use to reduce his income to that which is his disposable earnings have not been challenged by the Bank.

3. Although the evidence on income and expenses was presented to the Court on a monthly basis, the applicable statutes limiting garnishment, 15 U.S.C.S. § 1673 (Law.Co-op.1993), Ala.Code § 5–19–15 (1996), and

Although his analysis rests only on his payment of the Robinsons' alleged living expenses which are supposedly permissible ones for determination of the Constitutional Exemption amount, he overlooks the fact that Altec complied with a statute limiting garnishment to no more than the maximum allowed percent of Mr. Robinson's income. Under the applicable statutes, this may not exceed twenty-five percent. This resulted in Mr. Robinson having the amount of wages garnished already limited by applicable Alabama or federal law before his receipt of his paycheck.[4] In other words, he had already received one protection from garnishment before he received his wages net of this garnished amount.

After use of the Constitutional Exemption to further exempt one thousand dollars ($1,000.00) of his wages—once he stacks the Constitutional Exemption on top of the exclusion of the allowed percentage of his disposable earnings from garnishment, Mr. Robinson concedes that the Bank is entitled to the remaining monies. According to him, what is left after stacking may then be used to partially satisfy the Judgment, that is, until Mr. Robinson incurs other or greater expenses above those presented during the trial of this matter which then might decrease the Constitutional Exemption sum below one thousand dollars. Should this occur, the arithmetic must be redone and one may surmise that Mr. Robinson will contend that a lesser sum of wages—if any at all—will remain to satisfy the Judgment.

## II. The Objection

### A. The Specifics

Although the Bank asserted Mr. Robinson had waived his claim to the Constitutional Exemption, this Court ruled against the Bank on its waiver contention before the hearing on this matter commenced. The Bank also avowed that Mr. Robinson is not otherwise entitled to the Constitutional Exemption under Alabama law. It proffers that he may not stack the Constitutional Exemption on top of either the state or federal limitations on garnishment. Next, it objected to certain of Mr. Robinson's expenses as being excessive and not of a type which may be "counted" to determine if any of the monies previously exempted under the Constitutional Exemption have been used to pay expenses which reduce the value of the exempted property below one thousand dollars ($1,000). Finally, the Bank has challenged whether the amount of monies not subjected to taking by garnishment was the appropriate sum to be retained by Mr. Robinson. It maintains that a 401(k) plan contribution should not have been excluded from his disposable earnings for purposes of calculating how much should have been exposed to being garnished. The import of the Bank's assertions, if totally correct, is Mr. Robinson may not keep safe from payment to the Bank any of the garnished monies held by this Court's Clerk and that Mr. Robinson may have been paid monies in excess of what a proper calculation of the sum to be garnished would have rendered.

### B. The Minutia—Or What Reduces The Thousand Dollars

One of the Bank's objections is to Mr. Robinson's monthly housing expense of one thousand thirty-two dollars and thirty-

---

Ala.Code § 6–10–7 (1993), base the calculation of the sanctioned amount for garnishment of wages, salary, or other compensation on a weekly basis. No party raised this as an issue for the Court to consider. Because of the manner of resolution of this case, evaluation of what may be garnished on a weekly basis does not alter the outcome.

4. There was an error not of Altec's making which has caused eighty percent of Mr. Robinson's earnings after deduction of taxes, a health insurance premium, and the 401(k) plan contribution to be buffered from taking by garnishment. This error was caused by what the Bank served on Altec. It instructed Altec to limit the garnishment to twenty per cent of his net wages.

three cents ($1,032.33).[5] This is comprised of two items: rent and a loan repayment. Seven hundred ten dollars ($710.00) per month is for rental of the lower level of a duplex purchased by and titled in the Robinsons' daughter's and son-in-law's, Mr. and Mrs. Cooks', names. The remaining three hundred twenty-two dollars and thirty-three cents ($322.33) is the monthly payment amount for a loan obtained by Mr. Robinson's cousin in the amount of three thousand five hundred dollars ($3,500) (the Down Payment Loan). Mr. Robinson professes that his cousin obtained this loan in June, 1997, at Mr. Robinson's request. This occurred after the entry of the Judgment. These monies were supposedly given by Mr. Robinson to Mr. & Mrs. Cook to help them make the down payment required to finance the purchase of the duplex. The Robinsons have advanced that the Cooks do not have to repay them the amount of the Down Payment Loan.

Although there is no written agreement evidencing Mr. Robinson's liability for the Down Payment Loan, he contends the agreement made with his cousin was for him to make the payments on this debt. Mr. Robinson argues these payments are an expense which reduce his Constitutional Exemption below one thousand dollars. A fortiori, he reasons he may replenish this sum from the monies held by the Clerk of this Court and from wages received in the future as long as he is repaying this debt. The Bank holds a different conviction. It declares the housing expense to be unreasonable as being too much and comprised of a loan for which no liability exists.

In addition to discord over the housing expense, the Bank also believes that the contribution to Altec's 401(k) plan on behalf of Mr. Robinson is a deduction from his wages which may not be counted as a reduction in the disposable income from which the maximum amount of wages garnishable is calculated. Alternatively, it is an expense which may not be counted to reduce the protected monies exempted by the Constitutional Exemption. The 401(k) plan contribution has been five hundred seventeen dollars and forty-three cents ($517.43) per month. The Bank has not presented evidence to disprove that Altec's 401(k) plan trust is one qualified under 26 U.S.C.S. § 401 (Law.Co-op.1998). Nor is there evidence which controverts Mr. Robinson's position that this is a retirement program established by Altec for its employees.

Conjoined with the contest of the housing and 401(k) plan contribution is the Bank's attack on virtually all of Mr Robinson's living expenses. It disputes those for electricity, heating fuel, water and sewer, telephone, cable television, home maintenance, food and recreation. As one might suspect in what has become a protracted battle where the principle of the contending parties appears to have more value than principal, these, too, the Bank believes are excessive. Added to these is the Bank's protest that the personal property inventory submitted by Mr. Robinson as part of the process to claim the Constitutional Exemption is false because it does not list all his personal property. Lastly, the Bank argues that Mr. Robinson did not pay all the expenses he purports to have paid.

An extended evidentiary hearing was held on the controverting parties' factual and legal positions. Since the Bank did not present evidence sufficient to meet its burden of proof on its assertions that Mr. Robinson's claimed expenses for electricity, heating fuel, water and sewer, telephone, cable television, home maintenance, food and recreation were excessive, these need not further detract from the essential issues which need to be addressed. *See*

---

**5.** In his statement of expenses, Mr. Robinson listed his monthly housing expenses as one thousand thirty dollars and thirty-three cents ($1,030.33). The evidence submitted to the Court reveals the amount is actually one thousand thirty-two dollars and thirty-three cents ($1,032.33).

Ala.Code §§ 6–10–30 & 37 (1993); *Hollis v. Am. Wholesale Corp.*, 215 Ala. 644, 112 So. 204 (1927); *Kolsky v. Loveman*, 97 Ala. 543, 12 So. 720 (1893). The same evidentiary void exists for the Bank's claim that the personal property inventory is inaccurate and that Mr. Robinson failed to pay all the expenses he states he incurred. The result is identical, the Bank does not prevail on these contentions.

### III. The Shields—The Limitations On Garnishment Procedure Vs. The Property Exemptions

The remaining issues before the Court are (i) how much, if any, of the monies taken pursuant to the garnishment process may be withheld from garnishment's grasp by the Constitutional Exemption, (ii) whether monies contributed for Mr. Robinson as a 401(k) plan contribution are part of his disposable income for purposes of determining the maximum amount of monies subject to garnishment under either Alabama's limits on garnishment or the federal counterpart, and (iii) whether the 401(k) plan contribution and repayment of the Down Payment Loan are expenditures which reduce the property desired to be exempted by use of the Constitutional Exemption below the one thousand dollar maximum. To resolve Mr. Robinson's Constitutional Exemption assertions, an analysis must be made to determine if he is entitled to (i) the Constitutional Exemption in addition to having the benefit of either of Alabama's restrictions on garnishment or the federal limit on garnishing wages, and (ii) successively invoke the Constitutional Exemption set forth in Alabama's Constitution Art. X, § 204. Also, a determination is required of how Mr. Robinson's income is to be established for computation of the proper dollar amount to be garnished. If there is no difference in the fixing of this amount under the three potentially applicable statutes, Ala.Code § 5–19–15 (1996), Ala.Code § 6–10–7 (1993), or 15 U.S.C.S. § 1673 (Law.Co-op.1993), then which one should have been used and which ones are preempted, if any, need not

be determined. Otherwise, which one is the one to use must be settled.

To obtain the answers needed, a precursive and historical review of the development and interaction of Alabama statutes governing garnishment, its constitutional provision set forth in Ala. Const. of 1901, Art X, § 204, and the federal limit on garnishment set forth in 15 U.S.C.S. § 1671 *et seq.* (Law.Co-op.1993) is warranted. This review will assist in understanding why and what Mr. Robinson is attempting to do to protect his wages from garnishment, revealing what he does not have to and what he can do to achieve his goal, and knowing why and in what forum such actions are and are not permissible.

### A. Federal Garnishment Limitation— 15 U.S.C.S. § 1673

One means by which Mr. Robinson's wages are protected from garnishment arises from federal statutory law: 15 U.S.C.S. § 1673(a) (Law.Co-op.1993) (Federal Garnishment Limitation). This provision is set forth as part of the restrictions on garnishment sub-chapter of the Consumer Credit Protection Act, 15 U.S.C.S. § 1671 *et seq.* (Law.Co-op.1993). The term garnishment "means any legal or equitable proceeding through which the earnings of any individual are required to be withheld for payment of any debt." 15 U.S.C.S. § 1672(c) (Law.Co-op.1993). The debtor's earnings are defined as "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement plan." 15 U.S.C.S § 1672(a) (Law.Co-op.1993).

### I. General Rule—Maximum Garnishment

Subject to limited exceptions, the Federal Garnishment Limitation establishes twenty-five percent of disposable earnings as the maximum amount of garnishment of wages or salary of most individuals. It is the general rule applicable to all qualifying individuals and provides that

[e]xcept as provided in subsection (b) of this section and in section 1675 of this title, the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed

(1) 25 percent of his disposable earnings for that week, or

(2) the amount by which his disposable earnings for that week exceed thirty times the Federal minimum hourly wage prescribed by section 206(a)(1) of Title 29 in effect at the time the earnings are payable,

whichever is less. In the case of earnings for any pay period other than a week, the Secretary of Labor shall by regulation prescribe a multiple of the Federal minimum hourly wage equivalent in effect to that set forth in paragraph (2).

15 U.S.C.S. § 1673(a) (Law.Co-op.1993). As a consequence of this provision, at least seventy-five percent of an individual's disposable earnings are protected from garnishment. In some instances involving low income individuals, the thirty (30) times the federal minimum wage equals or exceeds all of a debtor's disposable income. This is not the case with Mr. Robinson. For this reason, only the seventy-five percent rule may apply to his wages.

Also, the determination of what is not garnishable is calculated on "disposable earnings"—not gross earnings. As used in conjunction with the federal restrictions on garnishment, it includes "that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld." 15 U.S.C.S. § 1672(b) (Law.Co-op.1993).

2. Exceptions to the General Rule

Only a few exceptions exist to the garnishment limit of twenty-five percent. For instance, it does not apply to "any order of any court of the United States having jurisdiction over cases under chapter 13 of Title 11"—which Chapter 13 bankruptcy practitioners refer to as a wage deduction order. 15 U.S.C.S. § 1673(b)(1)(B) (Law.Co-op.1993); see also In re Leask, 194 B.R. 416, 417 (Bankr.E.D.Tex.1996). Nor does it control when a debt for a state or federal tax is being collected. 15 U.S.C.S. § 1673(b)(1)(C) (Law.Co-op.1993). Additionally, a different garnishment formula is employed when the debt is based on an order for support. See 15 U.S.C.S. § 1673(b)(2) (Law.Co-op.1993). None of these exceptions apply to Mr. Robinson.

3. Interaction With State Laws

■ The restrictions on garnishment contained within the Consumer Credit Protection Act do not "annul, alter, or affect, or exempt any person from complying with, the laws of any State (1) *prohibiting garnishments or providing for more limited garnishment* than are allowed under this subchapter...." 15 U.S.C.S. § 1677(1) (Law.Co-op.1993) (emphasis added). A state is permitted to enact legislation which precludes all garnishment of earnings or which grants a debtor a greater protection of earnings than that allowed by the federal statute.[6] *See Yaden v. Osworth (In re Osworth)*, 234 B.R. 497 (9th Cir. BAP 1999); *Leask*, 194 B.R. at 417. Despite this allowance by Congress, some states have chosen to provide garnishment provisions that are not better and not identical, but are substantially similar to the federal provisions. *See Pruss v. Butler (In re Pruss)*, 235 B.R. 430 (8th Cir. BAP 1999); *Osworth*, 234 B.R. at 499; *In re Duncan*, 140 B.R. 210 (Bankr.E.D.Tenn. 1992). Substantially similar state limits on garnishment which are better for some debtors, but not all, than the federal statu-

---

**6.** "The Secretary of Labor may by regulation exempt from the provisions of section 303(a) and (b)(2) [15 U.S.C.S. § 1673(a) and (b)(2)] garnishments issued under the laws of any State if he determines that the laws of that State provide restrictions on garnishment which are substantially similar to those provided in section 303(a) and (b)(2) [15 U.S.C.S. § 1673(a) and (b)(2)]." 15 U.S.C.S. § 1675 (Law.Co-op.1993). Alabama has not received such an exemption.

tory protection cause a problem—preemption—if the state law does not restrict garnishment for all individuals to at least the extent accorded by 15 U.S.C.S. § 1673(a). *See, e.g., Hodgson v. Hamilton Municipal Court*, 349 F.Supp. 1125, 1132–1133 (S.D.Ohio 1972); *Hodgson v. Cleveland Municipal Court*, 27 Ohio Misc. 121, 326 F.Supp. 419, 429 (1971).

### B. Alabama Limitations On Garnishment Procedure—Ala.Code §§ 5–19–15, 6–10–7

### 1. Alabama Garnishment Limitation— Ala.Code § 6–10–7

#### (i) Its Source

For more than one hundred-thirty years, Alabama has permitted a debtor who is an employee or laborer to retain a certain amount of wages free from garnishment. No later than 1877, Alabama had by statute established that "the wages, salaries or compensation, of laborers and employees for personal service not exceeding twenty-five dollars per month, shall be free from garnishment for debt." *See* 1876 Ala.Code § 2823 (1877); *Enzor & McNeill v. Hurt*, 76 Ala. 595, 597 (1884); *see also Walker v. Williams & Bouler Construction Co.*, 46 Ala.App. 337, 241 So.2d 896, 899 (1970). This twenty-five dollar wage protection remained part of the Alabama Code until 1949. At that time, it was transformed from a fixed dollar amount to sixty percent of an employee's or laborer's wages, salary, or other compensation. *See* 1949 Ala.Acts, No. 541, p. 851; 1940 Ala.Code Tit. 7 § 630 (Supp. 1955); *Walker*, 241 So.2d at 899. This percentage was subsequently increased in 1957 to the seventy-five percent of wages or salary where it remains. *See* 1957 Ala. Acts, No. 613, p. 880; *Walker*, 241 So.2d at 899. If applicable, this statute makes sev-enty-five percent of Mr. Robinson's wages not subject to levy by the Bank.

Alabama's wage barrier to debt collection efforts is now iterated in Ala.Code § 6–10–7 (1993) (State Garnishment Limit-it). In pertinent part, it provides that

> [t]he wages, salaries, or other compensation of laborers or employees, residents of this state, for personal services, shall be exempt from levy under writs of garnishment or other process for the collection of debts contracted or judgments entered in tort in an amount equal to 75 percent of such wages, salaries, or other compensation due or to become due to such laborers or employees, and the levy as to such percentage of their wages, salaries, or other compensation shall be void.

Ala.Code § 6–10–7 (1993). This section literally sets the ceiling on garnishment as a percent of gross income. This is how it was initially interpreted by Alabama courts. *See, e.g., Walker*, 241 So.2d at 898. Despite the statute's wording and the earlier Alabama courts' reading of it, the most recent decisions of the Alabama Court of Civil Appeals now interpret it consistent with 15 U.S.C.S. § 1673(a) so that it calculates the amount protected from garnishment as seventy-five percent of disposable earnings. *See Knight v. Knight*, 658 So.2d 478 (Ala.Civ.App.1994). So for Mr. Robinson, the portion excluded from garnishment would be the same as under the Federal Garnishment Limitation.

Alabama Code § 6–10–7 (1993) facially tracks the Federal Garnishment Limitation. It, as with the Federal Garnishment Limitation, requires no action by the laborer or employee as a precondition to obtaining its benefit because any levy on the preserved seventy-five percent is void at its inception.[7] However, it is deficient

---

7. This is the interpretation of § 6–10–7's predecessor provisions which were drafted in the same format, yet some had different dollar amounts not subject to being garnished. *See Coffman v. Folds*, 216 Ala. 133, 112 So. 911, 913 (1927); *Ralls v. Ala. Steel & Wire Co.*, 143 Ala. 620, 39 So. 369, 370 (1905); *Richardson v. Kaufman*, 143 Ala. 243, 39 So. 368, 369 (1905); *McCormick Harvesting Mach. Co. v. Vaughan*, 130 Ala. 314, 30 So. 363 (1901). Also, Ala.Code § 30–3–67 (1998) allows a wage deduction order to exceed twenty-five

from a federal law perspective for low paid wage earners where thirty (30) times the federal minimum hourly wage may equal or exceed one hundred (100%) of one's disposable income. This is a reason why the State Garnishment Limit under Ala. Code § 6–10–7 may not be viable: it allows garnishment of a greater amount of wages than federal law for low income individuals. It also fails to give the same scope of coverage as federal law because it applies to only laborers and employees. Conversely, the Federal Garnishment Limitation encompasses individuals paid or payable for personal services.[8] 15 U.S.C.S. §§ 1672(a), 1673(a) & (b) (Law. Co-op.1993).

### (ii) Limit On Garnishment Process, Not An Exemption?

Whether Ala.Code § 6–10–7 is a statute specifying "exempt property" as differentiated from being a procedural limit on the garnishment process is on first consideration debatable and would appear to be a distinction without meaning. Ala.Code § 6–10–7 is set forth in Title 6 of the Alabama Code which has as its subject matter civil procedure. Chapter 10 of Title 6 is titled "Exemptions," uses the word

"exempt" in various subparts, and specifies the procedure to claim, contest, and, for some sections, to waive that which is granted in Title 6, Chapter 10 of the Alabama Code. Ala.Code § 6–10–7 is written using the terminology "exempt from levy. . . ." These factors show Title 6, Chapter 10 may be viewed either (i) as a legislatively devised procedure for collection of monies owed and a restriction on how it works, or (ii) as establishing categories of exempt property.

Albeit a subtle one, the distinction premised on the view that Ala.Code § 6–10–7 is procedural in nature is the one adopted by and relied upon by Alabama courts to avoid a conflict between (i) Ala.Code § 6–10–7 and (ii) Alabama's constitutional allowance of waiver of exemptions and its recognition of the enforceability of contracts containing waivers of exemptions.[9] *See Ralls v. Ala. Steel & Wire Co.*, 143 Ala. 620, 39 So. 369 (1905); *Richardson v. Kaufman*, 143 Ala. 243, 39 So. 368 (1905); *McCormick Harvesting Mach. Co. v. Vaughan*, 130 Ala. 314, 30 So. 363 (1901); *Mason v. USA Medical Ctr.*, 646 So.2d 90, 91 (Ala.Civ.App.1994); *Smith v. Avco Financial Serv. of Ala., Inc.*, 500 So.2d 1135

percent of disposable income so long as it does not go beyond the garnishment limit for support obligations of 15 U.S.C.S. § 1673(b).

8. By its wording, § 6–10–7 allows garnishment of twenty-five percent of a sum which is greater than disposable income as defined by 15 U.S.C.S. § 1672(b). Section 6–10–7's calculation is on wages, salaries, or other compensation due or to become due such laborers or employees. It is literally based on gross income, not disposable income as determined by 15 U.S.C.S. § 1672(b). Despite this, Alabama's courts have recently interpreted § 6–10–7's amount protected from garnishment as a percentage of disposable earnings as determined by 15 U.S.C.S. §§ 1672(b) and 1673(a). *See, e.g., Knight v. Knight*, 658 So.2d 478 (Ala.Civ.App.1994). This has occurred in the context of § 6–10–7 nowhere referring to disposable earnings and earlier Alabama court rulings under Ala.Code § 6–10–7 where the protected amount was seventy-five percent of gross wages. *See, e.g., Walker v. Williams & Bouler Constr. Co.*, 46 Ala.App. 337, 241 So.2d 896, 899 (1970). This shift is fortunate.

Without the altered status on how to compute what may be garnished, Ala.Code § 6–10–7 would unquestionably be superceded by federal law: 15 U.S.C.S. § 1673(a) (Law.Co-op.1993). The reason is twenty-five percent of gross wages is—with the only rarely occurring exception when gross earnings equals disposable earnings—always greater than the twenty-five percent of disposable earnings maximum of federal law.

9. This concept has also been used by federal courts for the similar purpose: to avoid striking down statutory limits on garnishment by use of the contract clause of the Constitution on the theory that a contractually agreed to waiver of an exemption should trump any statutory grant of an exemption for property—in contrast to a procedural limit placed on a statutorily created remedy—from garnishment's grab. *See Hodgson v. Hamilton Municipal Court*, 349 F.Supp. 1125, 1132–1133 (S.D.Ohio 1972); *Hodgson v. Cleveland Municipal Court*, 27 Ohio Misc. 121, 326 F.Supp. 419, 429 (1971).

(Ala.Civ.App.1986). More simply, the Alabama courts have looked at § 6–10–7 and its predecessors as a restriction on the garnishment process, not a limit on one's ability to waive by contract the category of property falling within that which is defined by Alabama's constitution or in Alabama's statutes as "exempt property." The theory espoused by Alabama's courts is that since garnishment is a statutorily created process to collect debts, a statute limiting this process is different from a waiver of a right to exempt property contracted for by the parties to an agreement such as the Bank and Mr. Robinson. Therefore, Alabama's legislature may limit the statute's scope—restrict how the garnishment process occurs—and it does not interfere with contract rights and Alabama's constitutional recognition that waivers of exemptions are enforceable.

This interpretation concomitantly means that Alabama's courts have determined that the procedural purpose of Ala.Code § 6–10–7 to restrict the garnishment process does not create a category of exempt property. The significance of this Alabama court formulation of what Ala.Code § 6–10–7 (1993) is and is not becomes apparent when one studies how the Alabama Court of Civil Appeals fails to pay heed to it in its rulings against stacking of the Constitutional Exemption on top of one or more of the limits on the garnishment process.

### 2. Alabama's Consumer Debtor Limitation on Garnishment— Ala.Code § 5–19–15

#### (i) Its Origin

Beginning in 1971, another way earnings of a debtor were protected from garnishment emerged in Alabama: Ala.Code § 5–19–15 (1996). It is applicable to earnings which are subjected to garnishment from a judgment based on a debt arising from a consumer loan, consumer lease, or consumer credit sale. 1971 Ala.Acts, No. 2052, p. 3290, § 1. At one time, the garnishment limitation of Ala.Code § 5–19–15 (State Consumer Garnishment Limitation) excluded as much as (1) eighty percent of a debtor's wages from garnishment[10] *Id.* The State Consumer Garnishment Limitation, as enacted, restrained garnishment of wages to the lessor of (1) twenty percent of the debtor's weekly disposable income, or (2) the amount by which the debtor's weekly disposable earnings exceeded fifty times the federal minimum hourly wage that was in effect when payable. *See* Ala. Code § 5–19–15 (1975). The debtor's disposable income was defined as "that part of the earnings of an individual remaining after deduction of amounts required by law to be withheld, and disposable earnings shall not include periodic payments pursuant to a pension, retirement, or disability program." *See* Ala.Code § 5–19–15 (1975).

#### (ii) Amendments—Lowering the Shield

The State Consumer Garnishment Limitation was amended in 1988 professedly to conform to the limitation on garnishment set by federal law. 1988 Ala.Acts, No. 88–294, p. 454, § 1. The effect of the modification was to reduce the minimum amount of wages protected from garnishment by the State Consumer Garnishment Limitation from eighty percent to seventy-five percent—the same as set forth in Ala.Code § 6–10–7 and 15 U.S.C.S. § 1673(a). Since the 1988 amendment, the amount of earnings subject to garnishment has been the lesser of twenty-five percent of a consumer debtor's weekly disposable earnings or the amount by which his or her disposable

---

**10.** As utilized in Ala.Code § 5–19–15, the term consumer "[w]hen used as an adjective with respect to a credit transaction, characterizes the credit transaction as one in which the party to whom credit is extended is a natural person and the money, property, or services which are the subject of the transaction are primarily for personal, family, or household use." Ala.Code § 5–19–1(2) (1996). A credit transaction is defined as "[a] loan or credit sale made by a creditor...." Ala.Code § 5–19–1(9) (1996). It "refers only to consumer loans and consumer credit sales irrespective of whether the term is preceded by the word 'consumer'." Ala.Code § 5–19–1(9) (1996).

earnings for that week exceeds thirty times the federal minimum hourly wage in effect at the time when the wages become payable. Ala.Code § 5–19–15 (Supp.1995); 1988 Ala.Acts, No. 88–294, p. 454, § 1. Note that the State Consumer Garnishment Limitation now set forth in § 5–19–15 has a different ambit from that of Ala. Code § 6–10–7, the State Garnishment Limit. The State Consumer Garnishment Limitation contains a provision identical to the federal statute, 15 U.S.C.S. § 1673(a), which effectively shields all of a minimum wage earners income from garnishment. It has the thirty (30) times the federal minimum hourly wage per week alternative. Again and if it pertains to Mr. Robinson, the safeguarded portion of his disposable earnings is seventy-five percent of this measure.

The State Consumer Garnishment Limitation was further amended in 1996. Ala. Code § 5–19–15 (1996); 1996 Ala.Acts, No. 96–576, p. 887, § 2. The changes resulting from the 1996 legislation are prospective in nature and operative only as to transactions entered after May 20, 1996, the effective date of the amendment. *See* 1996 Ala.Acts, No. 96–576, § 4; *see also Holcomb v. Henderson Nat'l. Bank,* 399 So.2d 850, 852 (Ala.Civ.App.1981). Since the contracts between the Bank and Mr. Robinson predate May 20, 1996, the 1996 amended version of this statute would not apply to the Bank—Robinson transactions.

(iii) Compared to Ala.Code § 6–10–7

The State Consumer Garnishment Limitation has one additional provision not provided by the Alabama Legislature for laborers or employees who are seeking to avoid garnishment of wages enforcing a judgment not arising from a consumer credit transaction (those Alabama debtors relegated to the State Garnishment Limit of Ala.Code § 6–10–7). By definition, § 5–19–15 excludes periodic payments to a debtor from a pension, retirement, or disability program. In certain instances in addition to that involving a low wage earner, this may result in a consumer debtor's

entire income being protected from garnishment so long as the debt attempted to be collected is from a consumer credit transaction. The same language is not contained in Ala.Code § 6–10–7 and an unanswered issue is whether § 6–10–7's "wages, salaries, or other compensation ... for personal services ..." will be interpreted to be consistent with Ala.Code § 5–19–15 and exclude periodic payments from a pension, retirement, or disability program.

(iv) 15 U.S.C.S. § 1673(a) Further Contrasted

The State Consumer Garnishment Limitation potentially grants greater shelter from garnishment than the Federal Garnishment Limitation because it defines disposable earnings as excluding periodic payments from a pension or retirement program. Under the federal statute, these are a portion of what comprises disposable earnings from which the maximum amount allowed to be garnished is determined. *Compare* Ala.Code § 5–19–15 (1996) *with* 15 U.S.C.S. § 1672(a) & (b) (1993).

Conversely, the State Consumer Garnishment Limitation does not apply to all consumer credit transactions. Ala.Code § 5–19–31 makes the State Consumer Garnishment Limitation inapplicable "(i) to any consumer credit transaction or other transaction involving an interest in real property or the sale, lease, or mortgage of an interest in real property ... [involving certain types of lenders], (ii) where the credit transaction is not a consumer transaction, or (iii) where the credit transaction is by ... [certain] trust institution[s]." Ala.Code § 5–19–31 (1996). The effect is the State Consumer Garnishment Limitation is not available for those persons involved in certain real estate financing transactions to preclude garnishment of compensation when the Federal Garnishment Limitation affords its protection to the same monies. What is left for such an individual is the State Garnishment Limit of Ala.Code § 6–10–7 (1993). Again, this raises the problem of § 6–10–7 not being

identical to or better than the Federal Garnishment Limitation for all individuals and makes its preemption an issue.

Unlike the State Consumer Garnishment Limitation, the Federal Garnishment Limitation is not similarly restricted. It applies to individuals and to obligations arising from more than consumer credit transactions. 15 U.S.C.S. §§ 1672(a) & (b); 1673(a) (Law.Co-op.1993). This even Alabama's courts have recognized. *See, e.g., State Comptroller v. First Ala. Bank,* 642 So.2d 1349, 1350 (Ala.Civ.App.1993).

### C. Alabama Personal Property Exemptions.

Other options traditionally available under Alabama law to safeguard a debtor's wages from a writ of garnishment have existed. These have included the Constitutional Exemption set forth in the Alabama Constitution of 1901, Art. X, § 204 and the statutory personal property exemption now set forth in Ala.Code § 6–10–6 (State Personalty Exemption).

### 1. Ala.Constitution of 1901, Art. X, § 204

With the Constitutional Exemption, a debtor may select and retain personal property with a value of one thousand dollars exempt from sale or execution. Using virtually identical words, this category of exemption was embodied in Alabama's Constitutions of 1868 and 1875. Constitution of the State of Ala.1875, Art. X, § 1; Constitution of the State of Ala. 1868, Art. XIV, § 1.[11]

The Constitution of the State of Ala. 1868, Art. XIV, § I provided that "[t]he personal property of any resident of this state to the value of one thousand dollars, to be selected by such resident, shall be exempted from sale on execution, or other final process of any court, issued for the collection of any debt contracted after the adoption of this constitution." Constitu-

tion of 1868, Art. XIV, § 1. This provision was retained in the Constitution of the State of Ala.1875, Art. X, § 1 which contained "[t]he personal property of any resident of this State, to the value of one thousand dollars, to be selected by such resident, shall be exempted from sale on execution, or other process of any court, issued for the collection of any debt contracted since the thirteenth day of July, eighteen hundred and sixty-eight, or after the ratification of this Constitution." Constitution of the State of Ala.1875, Art. X, § 1. Both of these received liberal construction by Alabama's courts. *Miller v. Marx,* 55 Ala. 322, 330 (1876).

 The successor to these Alabama personal property constitutional exemptions is Article X, § 204 of the present Alabama constitution. Ala.Constitution of 1901, Art. X, § 204. Art. X, § 204 sets forth that

> [t]he personal property of any resident of this State to the value of one thousand dollars, to be selected by such resident, shall be exempt from sale or execution or other process of any court, issued for the collection of any debt contracted since the thirteenth day of July, eighteen hundred and sixty-eight, or after the ratification of this provision.

Ala.Constitution of 1901, Art. X, § 204. The Constitutional Exemption precludes to the extent specified the collection of monies for debts created *ex contractu,* it does not apply to those arising in tort. *See Lasseter v. Lasseter,* 266 Ala. 459, 97 So.2d 555 (1957); *Kilgore v. Kilgore,* 572 So.2d 480 (Ala.Civ.App.1990). Unlike both the State Garnishment Limit of § 6–10–7 and the State Consumer Garnishment Limitation of § 5–19–15, the Constitutional Exemption is available by its terms to all Alabama residents, not just a laborer, employee, or a consumer debtor. It as well embraces all types of personal property,

---

**11.** Prior to the Constitution of the State of Ala.1868, the exemptions had been by legislative action with the first having been enacted in 1812 while Alabama was a territory. Not

until 1868 were any exemptions part of any Alabama Constitution. *Miller v. Marx,* 55 Ala. 322, 329–330 (1876).

not just wages, salaries, or other compensation. *Compare* Alabama Constitution of 1901, Art. X, § 204 *with* Ala.Code § 6–10–7 (1993) and Ala.Code § 5–19–15 (1996).

■ More consequential for purposes of disposing of this Robinson–Bank controversy is that Art. X, § 204, as each of its predecessors, spells out the exemptible property is "to be selected by such resident. . . ." It is not the Alabama legislature or Alabama's courts which get to pick what is exempt. Nor may they force the Alabama resident to choose what items are to be exempted. This Alabama's courts have repetitively held to be the case. *See Alley v. Daniel,* 75 Ala. 403, 405–406 (1883); *Weis v. Levy,* 69 Ala. 209, 211 (1881); *Miller v. Marx,* 55 Ala. 322, 330 (1876); *Bray & Bros. v. Laird,* 44 Ala. 295 (1870).

### 2. Statutory Personal Property Exemption—Ala.Code § 6–10–6

#### (i) Its Derivation

After an exemption for personal property was placed for the second time in an Alabama constitution, that of 1875, its legislature decided to once again include a similar exemption in its statutes. So, it was placed in the Alabama Code of 1876. *See* 1876 Ala.Code § 2820 (1877). Section 2820 of the Alabama Code of 1876 provided, in pertinent part, that "[t]he personal property of any resident of the state to the amount of one thousand dollars, to be selected by such resident, . . . shall be exempted from levy and sale under execution or other process for the collection of debts contracted after April 23, 1873 . . ." *See* 1876 Ala.Code § 2820 (1877). Like the Constitutional Exemption, a debtor could invoke this section to except no greater than one thousand dollars of personal property, including wages, from garnishment predicated on a contractual liability. *See* Ala.Code § 2820 (1876). Both the thousand dollar standard and the constraint making it apply only to debts arising from a contract remained unaltered

through numerous revisions of the Alabama Code.

The delimitation to contracted for debts was deleted in the Code of 1907. Ala.Code § 4164 (1907). Not until 1980 was the dollar amount modified. As found in Ala. Code § 6–10–6 (as amended, the State Personalty Exemption), it was then increased to three thousand dollars ($3,000). *See* 1980 Ala.Acts, No. 80–569, p. 879, § 3; *Roberts,* 591 So.2d at 871. After the 1980 amendment, the State Personalty Exemption provided that

> [t]he personal property of such resident to the extent of the resident's interest therein, to the amount of $3,000 in value, to be selected by him or her, and, in addition thereto, all necessary and proper wearing apparel for himself or herself and family, all family portraits or pictures and all books used in the family shall also be exempt from levy and sale under execution or other process for the collection of debts.

Ala.Code § 6–10–6 (Supp.1987).

#### (ii) The 1988 Limiting Amendments

Further alterations to the State Personalty Exemption and related sections were made in 1988. One product of this 1988 amendment is wages, salaries, or other compensation have been excluded as personal property within Ala.Code § 6–10–6's protection. *See* 1988 Ala.Acts, No. 88–294, p. 454. The amendment was intended to limit the section's application with regard to garnishment actions. The present version of the State Personalty Exemption is

> [t]he personal property of such resident, *except for wages, salaries, or other compensation,* to the extent of the resident's interest therein, to the amount of $3,000 in value, to be selected by him or her, and, in addition thereto, all necessary and proper wearing apparel for himself or herself and family, all family portraits or pictures and all books used in the family shall also be exempt from levy and sale under execution or other pro-

cess for the collection of debts. *No wages, salaries, or other compensation shall be exempt except as provided in Section 5–19–15 or Section 6–10–7.*

Ala.Code § 6–10–6 (1993) (emphasis added).

### 3. Personal Property: At First Indistinguishable, Now Different

At each's inception, personal property within the scope of coverage of the Constitutional Exemption and the State Personalty Exemption encompassed choses in action such as present and future wages. *See Avery v. E. Ala. Med. Ctr. (In re Avery),* 514 So.2d 1380, 1382 (Ala.1987); *see also Enzor & McNeill v. Hurt,* 76 Ala. 595, 597 (1884). This was altered in 1988 with regard to the State Personalty Exemption. Presently, it excludes wages, salaries, or other compensation and by its language purports to restrict the exemption of wages from levy to the extent allowed only by Ala.Code §§ 5–19–15 or 6–10–7. Section 6–10–6 does not refer to the Constitutional Exemption. *See* 1988 Ala. Acts, No. 88–294, p. 454, § 2; *Roberts v. Carraway Methodist Med. Ctr.,* 591 So.2d 870, 871 (Ala.Civ.App.1991). However, the Constitutional Exemption has continuously included wages within the perimeters of personal property protected from garnishment.

Despite Alabama's legislature's attempt in Ala.Code § 6–10–6 (1993) to do the contrary—to control when and how all vehicles available to safeguard a debtor's wages may be used, that § 204 of Art. X may be claimed by a debtor to retain wages from a creditor's dominion and control has and will continue to be true until and unless an amendment to Alabama's constitution is agreed to by the requisite number of its citizens. Any contentions that Alabama's Constitutional Exemption is not supreme to a legislative pronouncement is cavil. *See Gafford v. Pemberton,* 409 So.2d 1367 (Ala.1982); *Opinion of the Justices,* 252 Ala. 205, 40 So.2d 623 (1949);

*Miller v. Marx,* 55 Ala. 322, 333–335 (1876); *see also e.g., Fed'l. Sav. & Loan Ins. Corp. v. Holt (In re Holt),* 894 F.2d 1005 (8th Cir.1990).

### D. Summary of Shields Against Garnishment

There have been three limitations on garnishment extant and potentially available to stop the Bank from taking all of Mr. Robinson's wages by garnishment: the Federal Garnishment Limitation, 15 U.S.C.S. § 1673 (Law.Co.-op.1993), the State Garnishment Limit, Ala.Code § 6–10–7 (1993), the State Consumer Garnishment Limitation, Ala.Code § 5–19–15 (1996) (collectively sometimes limits on garnishment or limitations on garnishment.). Until 1988, there were two personal property exemption provisions, one constitutional and one statutory whereby Mr. Robinson could have had his wages excluded from garnishment: Ala. Constitution of 1901, Art. X, § 204 and Ala.Code 6–10–6 (Supp.1987). Since 1988, section 6–10–6 has not been available to protect Mr. Robinson's wages. So to the extent Alabama's legislature wanted to make the State Personalty Exemption of Ala.Code § 6–10–6 unavailable for shielding of wages, salary, or other compensation from garnishment and for stacking, this has been accomplished. The outcome of Mr. Robinson's debts having been incurred after 1988 is that only the Constitutional Exemption may be available to him to stack onto one of the limits on garnishment of 15 U.S.C.S. § 1673(a), Ala.Code §§ 5–19–15, 6–10–7.

### IV. Stacking: To Pile Or Heap

#### A. What It Is And How It Worked

For a time prior to the 1988 amendments to Chapter 10 of Title 6 of the Alabama Code, debtors were entitled to the exclusion of a certain amount of wages from garnishment by (i) the garnishment limitation available under Alabama law (the State Consumer Garnishment Limitation of Ala.Code § 5–19–15), (ii) the other Alabama garnishment limitation (State

Garnishment Limit of Ala.Code § 6–10–7), or (iii) the Federal Garnishment Limitation, 15 U.S.C.S. § 1673, plus each could assert the (i) Alabama constitutional personal property exemption (the Constitutional Exemption of Art. X. § 204), or (ii) State Personalty Exemption (Ala.Code § 6–10–6), to retain up to one hundred percent of his/her wages or salary despite the issuance of a writ of garnishment. *See Avery v. E. Ala. Med. Ctr. (In re Avery)*, 514 So.2d 1380 (Ala.1987); *Roberts v. Carraway Methodist Med. Ctr.*, 591 So.2d 870 (Ala.Civ.App.1991); *Walker v. Williams & Bouler Construction Co.*, 46 Ala.App. 337, 241 So.2d 896 (1970).

By way of an example, a debtor desiring to stack available exemptions/limitations on garnishment would receive the benefit of one of the State Garnishment Limit, the State Consumer Garnishment Limitation, or the Federal Garnishment Limitation which shield a select amount or percentage of earnings. *See Avery*, 514 So.2d at 1381; *Walker*, 241 So.2d at 899. These now limit garnishment to no greater than twenty-five percent of disposable income. Then, the debtor would also utilize either the State Personalty Exemption (up to one thousand dollars until increased in 1980 to three thousand dollars where it remains except for the deletion of wages, salaries, or other compensation from its coverage in 1988) or the Constitutional Exemption (up to one thousand dollars) to exempt any wages not protected by one of Ala.Code § 6–10–7, § 5–19–15, or 15 U.S.C.S. § 1673(a) and which otherwise would have had to have been paid to a creditor through the garnishment process. *See Avery*, 514 So.2d at 1381; *Walker*, 241 So.2d at 899. The last opinion of the Alabama Supreme Court on stacking was *Avery*. It plainly upheld stacking of the then utilizable State Personalty Exemption on the limitation of garnishment: "this section contains a clear expression of the legislative intent that property which can be garnished [that not shielded by a limitation on garnishment] can also be claimed exempt." *Avery*, 514 So.2d at 1382.

## B. The Legislative Rejoinder

As the review of the shields illustrates and not long after the *Avery* decision, Alabama's Legislature responded negatively to stacking. It amended Ala.Code §§ 6–10–6, 7, & 37 as well as Ala.Code § 5–19–15. *See* Ala.Code §§ 6–10–6, 7, & 37 (1993); Ala.Code § 5–19–15 (1996). The change to the State Personalty Exemption—Ala.Code 6–10–6—was to exclude wages, salaries, or other compensation from its coverage. The modification to Ala.Code § 6–10–37, a provision detailing the procedure for claiming an exemption for money, choses in action, or personal property, was to add "[n]o claim for exemptions shall exceed the greater of the amounts authorized by the Constitution of 1901 as amended or required by provisions of federal law." *See* 1988 Ala.Acts No. 88–294, p. 454, § 2; *Roberts*, 591 So.2d at 871. According to the scant legislative history regarding these changes, they were intended

> [t]o further provide for the civil procedures, exemptions, and remedies, from certain levies and sales under process, and garnishment proceedings ... to further amend and provide for: Section 6–10–6 relating to personal property exemptions from certain levies and sales, so as to exclude wages, salaries, or other compensation; Section 6–10–37 relating to the garnishment of money, choses in action or personal property, so as to prescribe that the maximum of such amounts shall be those provided by the Constitution or federal laws....

*See* 1988 Ala.Acts, No. 88–294, p. 454.

### 1. The Statutory Muddle Or For Want Of Legislative Clarity

The language added to Ala.Code § 6–10–37 is rather peculiar. As regards wages, salaries, or other compensation, it sets forth that an Alabama debtor may not claim an exemption for an amount greater than that authorized by the Alabama constitution—for over one hundred thirty-one

years, one thousand dollars—or required by provisions of federal law. One "provision" of federal law is undoubtedly the Federal Garnishment Limitation, but what are the other "provisions" referred to by the Alabama legislature in § 6–10–37, if any? Nowhere in the statute or Alabama case law is this addressed.

What happens to periodic payments pursuant to a pension, retirement, or disability program excluded from being earnings garnishable under § 5–19–15. Recall that § 5–19–15 restricts garnishment to a greater degree when a periodic pension or retirement payment is involved. Up to twenty-five percent is not protected from garnishment by the Federal Garnishment Limitation.[12] At any one time, the Constitutional Exemption does not shield more than one thousand dollars of such income. Are such payments now limited by the amendment to Ala.Code § 6–10–37 to the greater of one thousand dollars or to the extent sheltered from a creditor's claims under federal law? If this is so, why retain this portion of § 5–19–15?

This language of Ala.Code § 6–10–37 has created another problem. Even if Alabama's limits on garnishment of Ala.Code § 6–10–7 and Ala.Code § 5–19–15 granted more protection to wages, salary, or other compensation from garnishment than federal law or Art. X, § 204, is this taken away by Ala.Code § 6–10–37 which limits one to no greater than to the garnishment sanctuary afforded by Alabama's constitution or as required by provisions of federal law? On this basis, § 6–10–7 and § 5–19–15 are arguably of no further use or meaning! This is another of the ilk of quandaries created by this 1988 legislation.

Further confusion has been wrought by the 1988 amendments. Recall that the exclusion of a determinable amount of wages, salary, or other compensation from garnishment under the Federal Garnishment Limitation is automatic. It does not

necessitate a claim being made. This is also true under the literal terms of § 6–10–7 and § 5–19–15 and Alabama case law interpretation of § 6–10–7. *See* Ala.Code § 6–10–7 (1993); Ala.Code § 5–19–15 (1996); *see, also. e.g., Coffman v. Folds,* 216 Ala. 133, 112 So. 911 (1927); *Smith v. Avco Fin. Serv. of Ala., Inc.,* 500 So.2d 1135 (Ala.Civ.App.1986). If one does not have to claim the protection of any of these limitations on garnishment because each is self effectuating, does not the literal language of § 6–10–37 ("no claim") create another legal dilemma? As will be shown, it does.

This legislative miasma is spread farther by the 1988 language added to the State Personalty Exemption of Ala.Code § 6–10–6 which is "[n]o wages, salaries, or other compensation shall be exempt except as provided in Section 5–19–15 or Section 6–10–7." Ala.Code § 6–10–6 (1993). How is this consistent with section 6–10–37's limiting garnishment to no greater than that allowed by Art. X, § 204 or as required by provisions of federal law? It is not.

Despite the fact that the added language of section 6–10–37 referring one to the Alabama Constitution of 1901 or provisions required by federal law and the new wording of § 6–10–6 referencing only §§ 5–19–15 & 6–10–7 as garnishment checks were placed into these statutes at the same time, they are in conflict even if one interprets the "required by federal law" to be a reference to both federal laws and state laws such as §§ 5–19–15 & 6–10–7. As has been illustrated by the comparison of what is required by the Federal Garnishment Limitation, both the State Garnishment Limit and State Consumer Garnishment Limitation do not encompass the same scope of monies and individuals as does the Federal Garnishment Limitation. Thus, these state provisions may not be said to be required by provisions of federal

12. Other federal law may preclude garnishment of these monies. *See, e.g.,* 42 U.S.C.S. 407 (1998); 29 U.S.C.S. § 1056 (1998); *Bennett v. Ark.,* 485 U.S. 395, 108 S.Ct. 1204, 99 L.Ed.2d 455 (1988).

law in the 15 U.S.C.S. § 1677 sense of being allowed to coexist with the Federal Garnishment Limitation: even if read together as forming a unified limitation on the process of garnishment, they fail to meet the federal requirement of state laws affording comparable or greater protection from garnishment. *See* 15 U.S.C.S. § 1671(1) (Law.Co-op.1993); *Yaden v. Osworth (In re Osworth)*, 234 B.R. 497 (9th Cir. BAP 1999); *In re Leask*, 194 B.R. 416 (Bankr.E.D.Tex.1996).

Also does this "exempt except" wording of Ala.Code § 6–10–6 mean the State Consumer Garnishment Limitation of § 5–19–15 is to be an exemption statute as distinguished from a limit on the garnishment procedure or process? Just why this is significant is evident when one recollects Alabama's courts' holdings which treat § 6–10–7 and its predecessors going back as far as 1876 as limits on the statutorily created mechanism of garnishment and not (i) a limit on the ability of one to waive by contract one's right to retain properties as exempt, and (ii) the creation of a new category of exempt property. *See, e.g., Coffman v. Folds*, 216 Ala. 133, 112 So. 911, 912 (1927).

Since the Alabama courts have treated § 6–10–7 as a limit on the garnishment mechanism and the 1988 amendment to § 6–10–6 which explicitly refers to § 5–19–15 treats both § 6–10–7 and § 5–19–15 as statutory provisions having the identical purpose when dealing with the state's garnishment mechanism for earnings, § 5–19–15 also should be treated as a restriction on the ability to garnish and not an affirmative creation of a new category of exempt property. This interpretation is consistent with how both § 6–10–7 and § 5–19–15 were designed to operate: any levy on more than twenty-five percent of one's earnings is void. It, too, is congruous with Alabama's judicially adopted subtlety that such statutes are limits on the state's garnishment mechanisms and not legislation which created another category of exempt property. *See Coffman*, 112 So. at 913;

*Ralls v. Ala. Steel & Wire Co.*, 143 Ala. 620, 39 So. 369, 370 (1905); *Richardson v. Kaufman*, 143 Ala. 243, 39 So. 368, 369 (1905); *McCormick Harvesting Mach. Co. v. Vaughan*, 130 Ala. 314, 30 So. 363 (1901); *Mason v. USA Medical Ctr.*, 646 So.2d 90, 91 (Ala.Civ.App.1994).

Unfortunately, this interpretation that Ala.Code § 5–19–15 (1996) is only a procedural statute means that § 6–10–37—set forth in Title 6, the Civil Procedure portion of the Alabama Code—arguably caps the dollars precluded from being garnished by § 5–19–15—contained in the erstwhile consumer protection part of the Alabama Code, Title 5—to the greater of the one thousand dollar Constitutional Exemption or that required by provisions of federal law. This ensues because Title 6 of the Alabama Code and § 6–10–37 govern the "procedure" of garnishment.

But this Alabama law subtlety may create another dilemma. Remember that § 5–19–15, unlike the Federal Garnishment Limitation, excludes periodic pension and retirement payments from earnings subject to garnishment and these periodic payments for many individuals will exceed one thousand dollars! How could this incongruity be? Both were adopted at the same time and for the same purpose. No explanation is contained in the Alabama Code, the legislative history of these provisions, or in Alabama's courts' decisions.

The important point of this discussion of the 1988 legislative changes to these Alabama Code sections is as follows. The Alabama statutes regulating the state procedure which limits a creditor's access to a debtor's wages have such serious, unresolved conflicts between and among related sections that the Alabama Supreme Court may not follow the position taken by the Alabama Court of Civil Appeals on various issues, including stacking, due to the intermediate court's failure to take into account the impact of these inconsistencies. Why this is so comes after an overview of the Alabama Court of Civil

Appeals' holdings on the limits of garnishment and the exemption of wages.

## 2. Misperceptions Or How The Details Obfuscate The Obvious

Following the anti-stacking amendments of 1988 and relying in part on Ala.Code § 6–10–37, as amended, the Alabama Court of Civil Appeals has held more than once that debtors may not obtain the benefits of the federal or Alabama statutes which limit what may be garnished while concomitantly claiming the Constitutional Exemption or allocating a portion of the three thousand dollar exemption granted by Ala.Code § 6–10–6 (1993) to wages, salary, or other compensation. In other words, the no stacking changes to the Alabama Code were upheld by Alabama's intermediate appellate court. *See Trimble v. Greater Gadsden Hous. Auth.*, 603 So.2d 1102 (Ala.Civ.App.1992) (The debtor based her claim for an exemption from garnishment of seventy-five percent of her wages on Ala.Code § 6–10–7 and 15 U.S.C.S. § 1673. Further, she contended that she was entitle to utilize the Constitutional Exemption to shield the remaining twenty-five percent of her wages and rely on Ala.Code § 6–10–6 to protect one thousand nine hundred eighty dollars in personal property. The trial court only allowed the debtor to keep the one thousand nine hundred eighty dollars of non-wage personalty from her creditor plus the seventy-five percent of wages limitation. The Court of Civil Appeals, likewise, rejected the proposition that the remaining twenty-five percent of wages was permitted to be exempted as personal property up to the one thousand dollar amount established by Art. X, § 204 of the Alabama constitution while simultaneously reducing the total dollars of other, non-wage personal property claimed exempt under § 6–10–6 to two thousand dollars. The Constitutional Exemption was not allowed as an additional exemption, but was held to set a minimum standard.); *Sink v. Advanced Collection Serv., Inc.*, 607 So.2d 246, 248 (Ala.Civ. App.1992), *cert. denied,* 1992 Lexis 1377 (Ala.) (The debtor was not able to utilize Art. X, § 204 to exempt one hundred percent of his wages. The Art. X, § 204 and Ala.Code § 6–10–6 exemptions may not be combined to provide two thousand in personal property and one thousand in future wages to enable a debtor to exempt that portion of his/her wages allowed to be garnished under § 6–10–7, § 5–19–15, or 15 U.S.C.S. § 1673); *Roberts v. Carraway Methodist Med. Ctr.*, 591 So.2d 870, 872 (Ala.Civ.App.1991). It is obvious that the Alabama Court of Civil Appeals is correct that the changes to Ala.Code § 6–10–6 stop stacking as far as this section is concerned. The same may not be said for Art. X, § 204.

The Alabama Court of Civil Appeals recognized in the first case where it found in favor of no stacking, *Roberts,* that the Constitutional Exemption would in certain instances shield more wages then either the Federal Garnishment Limitation, 15 U.S.C.S. § 1673, or the State Garnishment Limit, Ala.Code § 6–10–7. It limited the debtor to the greater of the wages shielded from garnishment by (i) the Constitutional Exemption, (ii) the State Garnishment Limit, or (iii) the Federal Garnishment Limitation. *See Roberts,* 591 So.2d at 872. How it arrived at this holding is questionable. Alabama Code §§ 5–19–15, 6–10–6, 6–10–7 & 6–10–37 do not delineate this state of affairs for garnishments.

Moreover, in so holding, the *Roberts* court's opinion sets forth that

[a]lthough Roberts very strenuously argues for the allowance of both the constitutional exemption and the seventy-five percent exemption as to wages, we do not agree that he has correctly interpreted § 6–10–37, which we find to be controlling here. We further find that the constitutional provision is not an additional exemption to those provided by the legislature but, rather, that the provision serves to provide a minimum exemption below which the legislature may not go. *See Miller v. Marx,* 55 Ala. 322 (1876).

*Roberts*, 591 So.2d at 872. Unfortunately, the *Roberts* court overlooked that this portion of *Marx* deals with the homestead exemption portions of Art. XIV of the Constitution of 1868 and Art. X. of the Constitution of 1875, and why the phrase "not exceeding" a set dollar amount—which is not set forth in the personal property exemptions of these constitutions—did not prevent the legislature from granting a larger homestead exemption. It further fails to adhere to the clear holding of Alabama's Supreme Court that these constitutional provisions are personal rights of its citizens which "exempt[ed] the homestead, as an accomplished fact; *not to instruct the legislature on how it should be done." Marx*, 55 Ala. at 332 (emphasis added). As far as Art. X, § 204's earlier twins are concerned, the same holds true.

That the Alabama Supreme Court has held that the indistinguishable predecessors to Art. X, § 204 were a category of exempt property—not the Alabama judicially crafted subtlety of a limit on the procedure of levy and execution—is undeniable. The *Marx* court held

> All of them, unless section 2 [the homestead exemption] be an exception, secure benefits to the residents of this State, which cannot be taken away or impaired by the legislature. The benefits secured by the provisions of sections 1 [the identical personal property exemption to Art. X, § 204 of the Constitution of 1901], 3, and 5 are absolute....

*Marx*, 55 Ala. at 333. Conversely and overlooked by the *Roberts* court when it came to application in making its decision are the prior, unaltered holdings of it and others that Ala.Code §§ 6–10–7 & 37 are restrictions on the remedy of garnishment and not a category of exempt property. *See Coffman*, 112 So. at 913; *Ralls*, 39 So. at 370; *Richardson*, 39 So. at 369; *McCormick Harvesting Mach. Co. v. Vaughan*, 130 Ala. 314, 30 So. 363 (1901); *Mason v. USA Medical Ctr.*, 646 So.2d 90, 91 (Ala. Civ.App.1994). Yes, the *Roberts* court mouthed the procedural subtlety distinc-

tion as part of its opinion. *Roberts*, 591 So.2d at 871–872. However, it also speaks of §§ 6–10–7 & 37 as creating a category of exempt property, not restricting the remedy of garnishment, when it rules against stacking. This basis on which it premised its holding is inconsistent with its own recognition of § 6–10–7 as a limit on the remedy and with the prior judicially utilized subtlety that Title 6, Chapter 10 deals with procedure. Its classification of §§ 6–10–7 & 37 as making a class of exempt property is an unsupportable transmogrification of extant Alabama case law.

Finally, that Art. X, § 204 sets a minimum dollar value below which the Alabama legislature may not go for personal property protection is not determinative of when one may assert the Constitutional Exemption. Rather, *Marx* holds that the Alabama legislature may not control by statute the when and how the lineal forerunners of Art. X, § 204 may be claimed by Alabama's citizens.

Not unsurprisingly after *Roberts*, the Alabama Court of Civil Appeals in *Trimble* and *Sink* arrived at the same no stacking holding by reliance on the authority of *Roberts*. See *Sink*, 607 So.2d at 246–248; *Trimble*, 603 So.2d at 1102–1103. This is where the Alabama law resides on this point to this day.

C. Stacking—The May And Can Of It

1. Where You Can't

It is unquestionable that the Alabama Legislature intended to eliminate stacking of exemptions/limitations on garnishment with the personal property exemptions of § 6–10–6 (Supp.1987) and Art. X, § 204 by 1988 legislation which modified Ala.Code §§ 5–19–15, 6–10–6, 7 & 37. *See Roberts v. Carraway Methodist Med. Ctr.*, 591 So.2d 870 (Ala.Civ.App.1991); *Trimble v. Greater Gadsden Hous. Auth.*, 603 So.2d 1102 (Ala.Civ.App.1992); *Sink v. Advanced Collection Serv., Inc.*, 607 So.2d 246, 248 (Ala.Civ.App.1992). Up to this moment though, Alabama's highest court has not considered the effect and enforceability of

the 1988 amendments to the Alabama Code designed to prevent stacking. So until the Alabama Supreme Court rules differently on the stacking issue, *stare decisis* binds Alabama's lower courts and a debtor may not stack if the issue is one to be ruled upon by an Alabama court other than its Supreme Court. *See Atkins v. State,* 27 Ala.App. 212, 169 So. 330 (1936); *Brewer v. State,* 23 Ala.App. 116, 121 So. 689 (1929).

2. Where You Can And May

### (i) Consistency Of Federal–State Holdings

■ Is this true in a federal court? In diversity jurisdiction based cases brought in or to a federal court, it is a rule of general application that a decision rendered by an intermediate state court when the state's highest court has not spoken will be accepted as controlling authority unless there is some persuasive indication that the state's highest court would rule otherwise. *See Comm'r of Internal Revenue v. Bosch,* 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967); *Stoner v. N.Y. Life Ins. Co.,* 311 U.S. 464, 61 S.Ct. 336, 85 L.Ed. 284 (1940); *West v. Am. Telephone & Telegraph Co.,* 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139 (1940); *CSX Transp., Inc. v. Trism Specialized Carriers, Inc.,* 182 F.3d 788 (11th Cir.1999); *Assicurazioni Generali, S.p.A. v. Neil,* 160 F.3d 997 (4th Cir.1998); *Kurczi v. Eli Lilly & Co.,* 113 F.3d 1426 (6th Cir.1997); *Geary Distrib. Co. v. All Brand Importers, Inc.,* 931 F.2d 1431 (11th Cir.1991); *Somer v. Johnson,* 704 F.2d 1473 (11th Cir.1983). This rule should be followed in federal courts in the context of a garnishment predicated on non-diversity jurisdiction when the exemption being addressed involves state law and no federal law applies. *See Bosch,* 387 U.S. at 465, 87 S.Ct. 1776. This is a rule which prevents inconsistent results by application of identical state laws in different forums: here, state and federal.

A superficial examination of (i) Alabama's exemptions, and (ii) the limitations on garnishment under state and federal law may lead one to the conclusion that a federal court should—in reality, may be required—to follow the Alabama Court of Civil Appeals' holdings on stacking. Indeed and under the federal case law cited immediately above, the preclusion of stacking should be the rule in a federal forum unless either (i) persuasive indicia are presented to demonstrate that the Alabama Supreme Court would not adopt the position taken by the lower Alabama court and/or (ii) some other federal law or court decision may modify this state authority's otherwise binding nature. *See Bosch,* 387 U.S. at 465, 87 S.Ct. 1776. For this Court to not follow the Alabama Court of Civil Appeal's anti-stacking rulings of *Roberts, Trimble,* and *Sink,* a substantial reason or reasons must exist.

### (ii) When Departure From Consistency Is Warranted And Permissible

#### (a) Statutory Dissonance

One has been discussed. It is the incompatibilities of Ala.Code § 5–19–15 (1996) and Ala.Code §§ 6–10–6, 7, & 37 (1993). All that has previously been set forth on these irreconcilable provisions are persuasive indicia that the Alabama Supreme Court will in a factual context like the Bank–Robinson one not follow the anti-stacking holdings of *Roberts, Trimble,* and *Sink.*

#### (b) The No Waiver Blockage Of The Constitutional Exemption—The Can And Can't

Another is a more pernicious effect of the 1988 amendments to Ala.Code §§ 5–19–15 (1981), 6–10–6 (Supp.1987) and 6–10–7 & 37 (1977). As drafted, they preclude one from claiming the Constitutional Exemption. To understand why requires consideration of what limits on garnishment and exemptions for personal property can be waived.

■ There is no debate that Alabama law permits a debtor to waive his or her right to personal property exemptions. This waiver is acknowledged constitution-

ally and statutorily: Ala. Constitution of 1901, Art. X, § 210, Ala.Code § 6–10–120. The Alabama Constitution of 1901, Art. X, § 210 states that "[t]he right of exemption hereinbefore secured may be waived by an instrument in writing. . . ." Ala. Const. of 1901, Art. X, § 210. The ability to waive available exemptions as to personalty is further detailed in Ala.Code § 6–10–120 (1993). Pursuant to this section, "[a]ny person, by an instrument in writing, may waive his or her right to an exemption *in any property*, exempt from levy and sale under execution or other process." Ala. Code § 6–10–120 (1993) (emphasis added.).

It is noteworthy that the language of § 6–10–120 is that a debtor may waive any exemption. However, this language is tempered by Ala.Code § 6–10–126 and by holdings of the Alabama courts which make ineffective a waiver with respect to certain items of personal property deemed necessities for sustenance.[13]

Ala.Code § 6–10–126 is a provision adopted by the Alabama legislature as an amendment to § 4237 of the Code of 1907 by the Alabama Acts of 1915 at page 916, later codified as section 7966 of the Code of 1923. It was intended to prohibit taking from a debtor personal property of the

---

**13.** (a) No waiver of exemption in any written instrument shall be held to apply to or include or authorize the levy of an execution or attachment on any of the following property for any debt contracted:

 (1) Cooking utensils, cooking stoves, table, tableware, chairs, bed and bed clothing in actual use by the family;
 (2) Wearing apparel
 (3) A vehicle used by and essential to the debtor's business;
 (4) Tools used personally by and essential to the debtor's business;
 (5) The library of the debtor.
(b) Any levy upon such property is absolutely void.
(c) This section shall not apply to such property set out in subdivisions (3) and (4) of subsection (a) pledged in a consensual security agreement.
Ala.Code § 6–10–126 (1993).

**14.** Although this provision protects certain personalty from a waiver made by the debtor,

kind specified even if a waiver had been made. *See Coffman v. Folds*, 216 Ala. 133, 112 So. 911, 913 (1927). This remains true today. *See Smith v. Avco Financial Serv. of Ala., Inc.*, 500 So.2d 1135, 1136 (Ala.Civ. App.1986). Neither of these types of waiver is involved in the Robinson–Bank dispute.[14]

■ Yet one more restraint on the general Alabama rule of waivability are the unyielding interpretations and holdings regarding Alabama Code § 6–10–7 and certain of its predecessors. Until 1899, an ancestor of § 6–10–7, section 2038 of the Code of 1896, allowed one to waive the statutory protection for wages. In 1899, § 2038 of the Code of 1896 was amended to abolish garnishment of wages, salaries, or other compensation of laborers or employees for personal services to the sum of twenty-five dollars per month. This protection of wages could no longer be waived. *See Coffman*, 112 So. at 913; *Ralls v. Ala. Steel & Wire Co.*, 143 Ala. 620, 39 So. 369, 370 (1905); *Richardson v. Kaufman*, 143 Ala. 243, 39 So. 368, 369 (1905); *McCormick Harvesting Mach. Co. v. Vaughan*, 130 Ala. 314, 30 So. 363 (1901). The rationale adopted by the Alabama Supreme Court has consistently been that as restated in *Coffman*:

it does not create rights separate and distinct from those delineated in the § 6–10–6 personal property exemption. *See In re Bulger*, 91 B.R. 129, 130 (Bankr.N.D.Ala.1988); *First Ala. Bank of Montgomery v. Mims*, 66 B.R. 20 (M.D.Ala.1986); *Stewart v. Jones*, 35 B.R. 392 (S.D.Ala.1983); *Shepard v. Morris (In re Morris)*, 30 B.R. 392, 393 (Bankr.N.D.Ala.1983); *Sanders v. First State Bank of Franklin County (In re Sanders)*, 30 B.R. 80 (Bankr.N.D.Ala. 1983). Rather, § 6–10–126 acts as "a statutory limitation on the remedy available to creditors who hold a waiver of personal property exemptions executed by the debtor." *See Shepard*, 30 B.R. at 394. This interpretation is consonant with Alabama's courts other holdings that what is in Title 6, Chapter 10 is procedure, not property interests. *But see In re Satterwhite*, 28 B.R. 178 (Bankr.M.D.Ala. 1983) (Section 6–10–126 creates exemption rights in addition to the § 6–10–6 personal property election.). *Satterwhite* is at odds with the consistent position of Alabama's courts.

We have not a case of exemptions before us under section 7966, Code of 1923, declaring the levy "absolutely void," and general authorities as to waiver of exemptions are found in *Neely v. Henry*, 63 Ala. 261. The right to waive exemptions recognized by the Constitution were of the classes therein before secured by the Constitution (section 210, Const.). They consisted of the $1,000 to be selected (section 204, Const.); the homestead (section 205, Const.); that exempt from administration (section 206, Const.); the widow's (with no children) right to homestead rents and profits (section 208, Const.).

The limitation of the remedy (rather than a restraint on the right of waiver) was the expression of the public policy of the state as to the $25 wage exemption. *Adams v. Creen*, 100 Ala. 218, 14 So. 54; *McCormick v. Vaughan*, 130 Ala. 314, 30 So. 363; *Seay v. Palmer*, 93 Ala. 381, 382, 9 So. 601, 30 Am.St.Rep. 57.

*Coffman*, 112 So. at 913–914. The inability to waive the limit on garnishment of § 6–10–7 continues based on the same rationale that § 6–10–7 is merely a limit placed on what may be garnished by use of the state created process and not an exemption otherwise waivable. *See Smith v. Avco Financial Serv. of Ala., Inc.*, 500 So.2d 1135, 1136 (Ala.Civ.App.1986). Thus under Alabama law a laborer or employee may not waive what is excluded from garnishment under § 6–10–7.

As for Ala.Code § 5–19–15 (1996), no waiver provision exists in it or for it elsewhere in Title 5, Chapter 19 of the Alabama Code. This factor coupled with (i) the steadfast interpretation of the similar language of § 6–10–7 and its predecessors, and (ii) the fact that § 5–19–15 is a limit on the remedy of garnishment, just as § 6–10–7, means § 5–19–15's protection of earnings is also not waivable. As for the Federal Garnishment Limitation of 15 U.S.C.S. § 1673, it may not be waived. *See Donovan v. Hamilton County Municipal Court*, 580 F.Supp. 554 (S.D.Ohio 1984).

It is the nonwaivable aspect of each of the Federal Garnishment Limitation, State Garnishment Limit, and State Consumer Garnishment Limitation and its interaction with Ala.Code § 6–10–37's specification that "[n]o claim for exemptions shall exceed the greater amounts authorized by the Constitution of 1901 as amended or required by provisions of federal law" which causes one of the most significant adverse consequences on the constitutional rights of Alabama debtors. When one remembers the self-effectuating nature of each of the Federal Garnishment Limitation, State Garnishment Limit, and State Consumer Garnishment Limitation—one may not garnish a specified percentage or dollar amount of wages, salary, or other compensation, it becomes apparent that all debtors whose earnings are subjected to the garnishment process are automatically recipients of one of these protectors of wages. So was Mr. Robinson.

Now, even if a debtor or Mr. Robinson wants to waive the limit on garnishments of the Federal Garnishment Limitation, State Garnishment Limit, and/or State Consumer Garnishment Limitation so he or she may seek protection of wages from the Constitutional Exemption, they cannot due to each's nonwaivability. The result is such an Alabama debtor and Mr. Robinson always obtain the cover of one of the Federal Garnishment Limitation, State Garnishment Limit, or State Consumer Garnishment Limitation which means each keeps an amount of wages within § 6–10–37's not exceeding the greater of language. This coupled with the no stacking rule of Alabama's lower courts culminates in Mr. Robinson's and other Alabama debtor's continually being denied use of the Constitutional Exemption: to claim it after receipt of the benefit of one of the limitations on garnishment results in stacking under Alabama's court's holdings.

Indeed, it is a never ending cycle with the invariable outcome that one may never claim the Constitutional Exemption. This is what Alabama's legislature has done by

94

statutory amendments and Alabama's lower courts have resolved the outgrowth to be. Both are not in consonance with what Alabama's constitution grants its citizens and what may not be altered by statute or the lower Alabama court's embracing of no stacking of the Constitutional Exemption.

### (c) That Which Is Supreme—The Why Of No Legislative Alteration

Supplementing the justifications for a federal court not following the position taken by the Alabama Court of Civil Appeals against stacking of the Constitutional Exemption is that it did not address how Alabama's legislature may limit by statute—not a constitutional amendment or under the authority of a federal law—access to the Constitutional Exemption or the protection mandated by the Federal Garnishment Limitation. Upon consideration of how Alabama's legislature maintains it may by statute modify a substantive right granted under Alabama's constitution or a protection required by federal law, the Alabama Supreme Court most certainly would reach a decision contrary to that of its Alabama inferior court. Just why is so simple and involves such basic legal concepts that they were apparently missed in the no-stacking rulings of the Alabama Court of Civil Appeals.

### (1) Receiving Benefit Of State Garnishment Limit Or State Consumer Garnishment Limitation Not Equal To No Constitutional Exemption

■ Consider this anomaly. The Alabama Court of Civil Appeals construed amendments to the Alabama Code enacted in 1988 as restricting the ability of a debtor to claim the Constitutional Exemption.

This is undoubtedly what the Alabama Legislature intended. But, nothing in the Constitutional Exemption set forth in Art. X, § 204 or elsewhere within the Alabama constitution prevents a debtor from claiming it in conjunction with the Alabama limitations on the garnishment procedure. It is such a fundamental aspect of Alabama jurisprudence that a legislature may not by statute modify, alter, or amend a constitutional right that no recitation of authority is necessary! However, for the benefit of those persons who are more comfortable with citations, *see, e.g., Hunt v. Decatur City Board of Education,* 628 So.2d 393 (1993); *Gafford v. Pemberton,* 409 So.2d 1367 (1982): *Opinion of the Justices,* 252 Ala. 205, 40 So.2d 623 (1949); *Miller v. Marx,* 55 Ala. 322, 332–333 & 335, 1876 WL 1161 (1876).

■ This much is certain: Alabama's legislative attempt to restrict when one may seek to use the Constitutional Exemption is not capable of withstanding constitutional scrutiny. That it may prevent one who claims the Constitutional Exemption from subsequently receiving entitlement to another state statutory exemption or state limit on the garnishment process is *not* at issue in this Bank—Robinson fight. It is the reverse sequence of events which is: the receipt of the benefit of § 6–10–7 or § 5–19–15 may not be a basis by statute to stop one from subsequently asserting the Constitutional Exemption.[15]

### (2) Receiving Benefit of Federal Garnishment Limitation Not Equal To No Constitutional Exemption

■ Likewise, the Alabama Legislature lacks the authority to prohibit a

15. One Alabama Court of Civil Appeals opinion has taken a different tactic to restrict the coverage of the Constitutional Exemption. While discussing stacking of the pre–1988 version of Ala.Code § 6–10–6 on top of the limits on garnishment, it concludes a debtor may not have both "exemptions" if the value of his personal property, "including the amount of wages remaining after the wage exemption is taken, exceeds one thousand dollars." The authority for this is recited to be *Walker v. Williams & Bouler Constr. Co.,* 46 Ala.App. 337, 241 So.2d 896 (1970). *Holley v. Crow,* 355 So.2d 1123, 1126 (Ala.Civ.App. 1978).

Later within this opinion, the Court of Civil Appeals asserts that a debtor can only protect in the aggregate one thousand dollars of personal property from sale or execution regardless of what statutory and/or constitutional provisions are utilized. It sets forth "[[h]e cannot exceed this amount and if he is found to have over one thousand dollars in personal

debtor who obtains the benefit of the Federal Garnishment Limitation of 15 U.S.C.S. § 1673(a) from subsequently claiming the Constitutional Exemption. This is especially relevant when one understands that under federal law the debtor does not have to claim or assert the Federal Garnishment Limitation. Rather, it is automatic in that the statute prohibits garnishment of wages beyond certain thresholds without any action being taken by a debtor. *See Donovan v. Hamilton County Municipal Court*, 580 F.Supp. 554 (S.D.Ohio 1984). Under Alabama decisions, this, too, is true for the State Wage Exemption and the State Consumer Garnishment Limitation. *See, e.g., Coffman v. Folds*, 216 Ala. 133, 112 So. 911 (1927); *Smith v. Avco Fin. Serv. of Ala., Inc.*, 500 So.2d 1135

(Ala.Civ.App.1986). So what happens first is the employer—not the employee—generally uses one of the State Garnishment Limit, State Consumer Garnishment Limitation, or the Federal Garnishment Limitation, as the limit on the procedure of garnishment. This generally occurs, as in this case, before the employee has a chance to "claim" any exemption. Once this transpires, Alabama avowedly precludes any election of the Constitutional Exemption.

 Once more recall that the amendment to Ala.Code § 6–10–37 specifies the mechanism by which a debtor may protect his/her wages from garnishment and sets forth "[n]o claim for exemptions shall exceed the greater of the amounts authorized by the Constitution of 1901, as amended, or required by provisions of federal law."[16]

property he is not entitled to claim the personal property exemption provided in the constitution and the seventy-five percent wage exemption.]" *Holley*, 355 So.2d at 1127.

There are multiple problems with this analysis. Initially, it overlooks the constitutional right of the debtor to select specific property he or she wants to exempt. Art. X, § 204 of Const. of 1901; *Weis v. Levy*, 69 Ala. 209, 211 (1881); *Roberts v. Carraway Methodist Med. Ctr.*, 591 So.2d 870, 872 (Ala.Civ.App.1991). That one has other personal property worth more than one thousand dollars is irrelevant. If he or she does not want to or need to guard it from creditors by use of the Constitutional Exemption does not take away from the constitutional right recognized by the Alabama Supreme Court in *Weis* to have and hold at all times an exemption of personal property "of his own selection...." Added to this is the fact that if not otherwise kept from being garnished, the property not selected can be taken by a creditor.

Also, the *Holley* court miscites *Walker*. The *Walker* language repeated in the *Holley* opinion limiting the total value of the property exempted under Ala.Code § 6–10–6's predecessor to one thousand dollars, including the twenty-five percent not kept from garnishment by Ala.Code § 6–10–7's forebearer, is misunderstood. The *Walker* court expressly upheld excluding seventy-five percent of wages from garnishment plus exempting up to one thousand dollars of the twenty-five percent otherwise subjected to the garnishment procedure. This was done by use of the statutory personal property exemption of Title 7, section 629 of the Alabama Code of 1940. Converse to the *Holley* determination,

the *Walker* court never limited the aggregate dollar value from use of the limit on garnishment, now Ala.Code § 6–10–7, plus the exemption of personal property of all sorts under what is now Ala.Code § –10–6 to the aggregate sum of one thousand dollars. *See Walker*, 241 So.2d at 899–900. Finally, this *Holley* interpretation is at odds with the Alabama holdings, pre–1988, that stacking the personal property exemption of § 6–10–6 on top of the limits on garnishment was allowed. *See Avery v. E. Ala. Med. Ctr. (In re Avery)*, 514 So.2d 1380, 1382 (Ala.1987). Most assuredly, the *Holley* determinations are wrong under the then governing Alabama law.

16. Ala.Code § 6–10–37 specifies "[w]hen money, choses in action or personal property are garnished and the defendant claims the same, or any part thereof, as exempt, he shall file his claim thereto in writing, verified by oath, in the court in which such proceedings are pending, accompanied by a statement setting forth the personal property, choses in action, and money and the location and value thereof, as required in the statement to be filed under the provisions of Section 6–10–29. Such claim the plaintiff, in person or by his agent or attorney, may contest as in cases of contest after declaration filed, and such contest shall be tried and determined as other contests of claims of exemptions are tried and determined. If the defendant has notice of the garnishment, the claim of exemption must be interposed before judgment of condemnation, but if not, such judgment shall not operate to impair or affect his claim of exemption. Notice of the garnishment must be in writing

What this part of § 6–10–37 purports to cause the state of garnishment in Alabama to be and what the Alabama Court of Civil Appeals has held is that by receiving—not claiming—the Federal Garnishment Limitation an Alabama debtor may not also claim the Constitutional Exemption! *See* Ala.Code § 6–10–37 (1993); *Roberts*, 591 So.2d at 872; *Trimble v. Greater Gadsden Hous. Auth.*, 603 So.2d 1102 (Ala.Civ.App. 1992); *Sink v. Advanced Collection Serv., Inc.*, 607 So.2d 246, 248 (Ala.Civ.App.1992). Where in the Alabama constitution is this set forth? The answer is this constitutional right is not so constrained. Just why is the same rationale. A state by statute may not determine when one receives that which its constitution did not so restrict. *See, e.g., Fed'l. Sav. & Loan Ins. Corp. v. Holt (In re Holt)*, 894 F.2d 1005 (8th Cir. 1990); *Miller v. Marx*, 55 Ala. 322, 332–333 & 335, 1876 WL 1161 (1876).

### (3) Claiming Constitutional Exemption Not Equal To No Federal Garnishment Limitation

 Conversely, Ala.Code § 6–10–37 (1993) and its Alabama Court of Civil Appeals interpretation is that if one claims the Constitutional Exemption, he/she may not also receive the protection of the Federal Garnishment Limitation. Again, where in the Alabama constitution or federal law is there support for this position? Once more, the answer is nowhere! For just as the Alabama Legislature may not limit, annul, restrict, or otherwise modify a right or privilege granted by Alabama's constitution—and with equal lack of want of citation for a co-equal fundamental principle—a state may not, by state statute or other law, absent federal consent, limit, annul, restrict, or otherwise modify that which is granted by federal law. For those who desire the recitation of more specific authority, *see, e.g.,* Art. VI, clause 2 of the United States Constitution; *Hodgson v. Hamilton Municipal Court*, 349 F.Supp. 1125 (S.D.Ohio 1972); *Hodgson v. Cleveland Municipal Court*, 27 Ohio Misc. 121, 326 F.Supp. 419 (1971.). Even as long as seventy-two years ago, the Alabama Supreme Court recognized this rule of law. *Coffman v. Folds*, 216 Ala. 133, 112 So. 911, 912 (1927).

This authority recognizes the supremacy of federal law over conflicting state law. But by its 1988 amendments to §§ 5–19–15, 6–10–6, 7, & 37, what the Alabama Legislature believes and states it intended to do, and what the Alabama Court of Civil Appeals has stated was done and upheld is to purportedly make a state statute superior to a governing federal law. The supremacy clause of the Constitution and the concept of preemption by a conflicting federal law have been overlooked when one such as Mr. Robinson desires in this context to exercise his unwaived Alabama constitutional grant of exemption for personal property of all kinds including wages, salaries, and other compensation.[17]

---

and may be given by the plaintiff or garnishee, but must be served by the sheriff at least five days before any judgment of condemnation. No claim for exemptions shall exceed the greater of the amounts authorized by the Constitution of 1901, as amended, or required by provisions of federal law." Ala.Code § 6–10–37 (1993).

17. In the context of child support, the issue of preemption has not been overlooked by the Alabama Court of Civil Appeals. In two cases involving enforcement by garnishment of child support judgments, the court held that Ala.Code § 6–10–7 was not preempted by federal law. *Knight v. Knight*, 658 So.2d 478, 479 (Ala.Civ.App.1994); *Crockett v. Dobbs*,

545 So.2d 811 (Ala.Civ.App.1989). In both cases, the Alabama court held that Ala.Code § 6–10–7 which limits garnishment to twenty-five percent of disposable income is more protective than the Federal Garnishment Limitation of 15 U.S.C.S. § 1673. This it stated is due to the fact that for support enforcement 15 U.S.C.S. § 1673(b) provides for a limit on garnishment which protects from fifty to sixty-five percent of disposable income. Although this analysis of preemption and the factual predicate used to uphold Ala.Code § 6–10–7 appear on superficial evaluation to be correct, it fails to consider federal authority preempting other states garnishment statutes which offer better protection for some and worse for others. *See, e.g. Hodgson v.*

For purposes of deciding whether stacking of the Constitutional Exemption by Mr. Robinson on top of the benefit of the limitation on garnishment of his wages to twenty-five percent of his disposable income, this Court need not decide whether Ala.Code § 5–19–15 (1996) or Ala.Code § 6–10–7 (1993) was utilized. Alabama's constitution allows such stacking to occur. Also and due to Mr. Robinson's entitlement to the minimum benefit prescribed by 15 U.S.C.S. § 1673(a) to keep seventy-five percent of his wages from the Bank regardless of the existence of Alabama's otherwise applicable provisions, Mr. Robinson is given by the federal government the right to this benefit of the Federal Garnishment Limitation. He also has the right to claim the Constitutional Exemption in addition thereto.[18] More simply, stacking of exemption/garnishment limitations with the Constitutional Exemption is still permissible and possible in Alabama. That is, so long as one is in a court which gives due accord for the supremacy (i) of federal law over state statutes and/or (ii) of Alabama's constitution over its legislature's enactments. One may and can stack the Constitutional Exemption so long as it is sought in a federal court, the when and where of now.

Probing into the history of the development of the limitations on garnishment, the Alabama personal property exemptions, and the rationale of the decisions on the issue of stacking of the Alabama Court of Civil Appeals divulges that persuasive reasons under Alabama's constitution, Alabama Supreme Court holdings, and the supremacy of federal law support a federal court not adhering to the Alabama Court of Civil Appeals' no stacking rule. The consequence is that this Court affirms Mr. Robinson's right to stack the Constitutional Exemption on top of his receipt of the benefit of a limitation on garnishment.

V. Right To Reassert To Maintain That Which The Alabama Constitution Gives

A. The Again And Again

Although not evident from a reading of the Constitutional Exemption and its predecessor provisions of earlier constitutions, the ability of Mr. Robinson to assert the Constitutional Exemption multiple times to maintain at all times a level of one thousand dollars of exempt personal property has long been recognized by Alabama courts. *See Ralls v. Ala. Steel & Wire Co.,* 143 Ala. 620, 39 So. 369 (1905); *Weis v. Levy,* 69 Ala. 209 (1881); *Ala. Conference v. Vaughan,* 54 Ala. 443 (1875); *Roberts v. Carraway Methodist Med. Ctr.,* 591 So.2d 870 (Ala.Civ.App.1991); *Walker v. Williams & Bouler Construction Co.,* 46

---

*Hamilton Municipal Court,* 349 F.Supp. 1125 (S.D.Ohio 1972); *Hodgson v. Cleveland Municipal Court,* 27 Ohio Misc. 121, 326 F.Supp. 419 (1971). Thus, the courts which are the final arbiter of federal law have held to the contrary on preemption involving a state garnishment statute having the same divergent impact as Alabama's—some protected more, others protected less than under the Federal Garnishment Limitation—on the garnishment of debtors' wages, salary, or other compensation.

18. Further analysis of the 1988 amendments to §§ 5–19–15, 6–10–6, 7, & 37 is that they do not comply with 15 U.S.C.S. § 1677 which is the federal provision which would allow Alabama to have enforceable garnishment limitations different in the sense always as good as or better than federal ones. Although Alabama could by statute have proscribed garnishment or made it more limited then that under federal statute, it can not preclude protection of wages granted by the federal statute unless the Secretary of Labor in accordance with 15 U.S.C.S. § 1675 determines that the state law provides restrictions on garnishment substantially similar to 15 U.S.C.S. § 1673(a) and (b)(2) and exempts by regulation garnishments issued under Alabama laws from the application of the Federal Garnishment Limitation. 15 U.S.C.S. § 1675 (Law.Co-op.1993). As is set forth earlier in this opinion when comparing the breadth of earnings not garnishable under Ala.Code § 6–10–7 in conjunction with the limited scope of coverage of § 5–19–15, these state provisions for some individuals allow a larger amount of wages, salaries, or other compensation to be taken by the garnishor than federal law will permit. Thus, Alabama could not now qualify for exemption from § 1673(a)'s application.

Ala.App. 337, 241 So.2d 896 (1970). In 1881, the Alabama Supreme Court declared that

> [i]t is the right of every debtor, secured by the constitution and by the statute enacted for the purpose of giving full effect to the constitutional provision, to select from all the personal property he may own, any part thereof, not exceeding one thousand dollars in value, and to hold and retain it, exempt from levy and sale under judicial process for the payment of debts. It is a simple exemption of personal property of the value of one thousand dollars, selected by the debtor, the ... constitution contemplate[s]. At the same time, he can not have more than one such exemption, as at the same time he can not have more than one homestead. When the exemption has once been claimed, the property selected by the debtor and allotted to him, so long as he retains it, and it is undiminished in value, he is-without right to a further exemption; otherwise double exemptions could be claimed and the whole of his property, to the prejudice of his creditors. *But if the property allotted to him has been taken from him without fault on his own, or it has been consumed in maintaining himself or family, a subsequent exemption may be claimed. It is his right to have and hold, at all times, an exemption of personal property of the value of one thousand dollars, of his own selection, free from liability to debts.*

*Weis v. Levy,* 69 Ala. 209, 211 (1881) (emphasis added); *see also Roberts,* 591 So.2d at 872.

What is evident is that Mr. Robinson may through use of the Constitutional Exemption select up to one thousand dollars of his personal property as exempt from levy and sale under judicial process for the payment of debts. In this instance, he desires to and may use it to harbor his wages. Also and assuming certain conditions are satisfied, whenever the amount of personal property retained as exempt under the Constitutional Exemption is reduced below the allowed dollar amount, Mr. Robinson may reassert the Constitutional Exemption for an amount necessary to restore the level of exempt personal property to the one thousand dollar level. *See Ralls v. Ala. Steel & Wire Co.,* 143 Ala. 620, 39 So. 369 (1905); *Weis v. Levy,* 69 Ala. 209 (1881); *Ala. Conference v. Vaughan,* 54 Ala. 443 (1875); *Roberts v. Carraway Methodist Med. Ctr.,* 591 So.2d 870 (Ala.Civ.App.1991); *Walker v. Williams & Bouler Construction Co.,* 46 Ala.App. 337, 241 So.2d 896 (1970).

B. When To Shield For The Second, Third, ... Ad Infinitum Time?

While it is settled law in Alabama that the Constitutional Exemption may be claimed repetitively, it is not obvious when it may be reclaimed successfully. Examination of the Alabama Constitution of 1901, Article X, § 204 and its lineage does not provide guidance. A review of Alabama decisional law imparts that the Constitutional Exemption can be reasserted when the property chosen by the debtor as exempt has (i) been lost through no fault of the debtor, (ii) deteriorated in value without fault on the debtor's part, (iii) been consumed to maintain the debtor and/or his/her family, or (iv) been used to pay the debtor's debts. *See Weis,* 69 Ala. at 211 (The Alabama Supreme Court held the lower court erred by not considering evidence that the property claimed as exempt by the appellant had been taken by judicial process when determining if the appellant was entitled to another claim of exemption under an identical provision of a prior Alabama constitution.); *Vaughan,* 54 Ala. at 445 (The debtor sold his exempt personal property for an amount below the value of the personal property exemption and was allowed to re-claim the state statutory personal property exemption that was in effect before the Constitution of 1868's personal property exemption was adopted.); *Ralls,* 39 So. at 369 ("[A]lthough a man may claim at one time a certain fund as exempt, yet upon another

levy or garnishment, if he has used up that amount, he can make another claim."); *see also Roberts,* 591 So.2d at 872 (The debtor must establish that he lost the exempt property through no fault of his own before he obtains the exemption's benefit to protect more property.). Even if one of these Alabama case law delineated criteria is satisfied, a debtor's claim of a further exemption may be disallowed if it is demonstrated that the previously exempted property was disposed of in a fraudulent manner to obtain another exemption. *See Weis,* 69 Ala. at 211.

Although Mr. Robinson's entitlement to reclaim the Constitutional Exemption when the value of property so exempted falls below one thousand dollars is correct, whether he meets the case law standards for having depleted in a permissive manner the exempted property is another. This entails reflection on the 401(k) plan contributions, the Down Payment Loan gift made by Mr. Robinson, and whether either is an allowable expense which reduces the value of property exempted under the Constitutional Exemption below one thousand dollars.

### VI. Contributions: Voluntary Or Not, No Matter

#### A. The Measuring

This remaining matter entails Mr. Robinson's 401(k) plan contribution. The Bank is of the opinion that it should not have been a reduction in Mr. Robinson's earnings made as part of Altec's ascertaining Mr. Robinson's disposable earnings. To decide whether the Bank is correct necessitates a determination of how the limitations on garnishment govern the fixing of disposable earnings. The Federal Garnishment Limitation sets forth that disposable earnings are that portion of one's pay which remains after having "any amounts required by law to be withheld." 15 U.S.C.S. § 1672(b) (Law.Co-op.1993).

As regards the State Garnishment Limit of Ala.Code § 6–10–7, it's wording is in terms of a calculation based on gross earnings. However, the most recent Alabama court rulings have used 15 U.S.C.S. § 1672(b)'s measure of disposable earnings to which Ala.Code § 6–10–7's twenty-five percent limit on garnishment is applied. *See Knight v. Knight,* 658 So.2d 478, 479 (Ala. Civ.App.1994). The import is that both the Federal Garnishment Limitation and the State Garnishment Limit calculate disposable earnings in the same manner.

The only other limit on the garnishment process is the State Consumer Garnishment Limitation of Ala.Code § 5–19–15. For Mr. Robinson, it's base for ascertaining the maximum amount of garnishment is identical by its terms to the Federal Garnishment Limitation: disposable earnings are defined for purposes of Mr. Robinson's case by use of identical words.[19] *Compare* 15 U.S.C.S. § 1672(b) (Law.Co-op.1993) *with* Ala.Code § 5–19–15 (1996). Since Alabama courts determine the earnings of a debtor excluded from garnishment by Ala.Code § 6–10–7 by use of the definition of 15 U.S.C.S. § 1672(b) and the State Consumer Garnishment Limitation of Ala.Code § 5–19–15 uses verbatim the wording of 15 U.S.C.S. § 1672(b) for the same purpose, it is evident that Alabama would compute for State Consumer Garnishment Limitation purposes disposable earnings to be the same as calculated by 15 U.S.C.S. § 1672(b).

This means that for deciding whether Mr. Robinson's 401(k) contribution is a reduction of his earnings and therefore not part of disposable income for garnishment does not require ascertaining whether either or both the State Garnishment Limit or State Consumer Garnishment Limitation are preempted by federal laws. This is consistent with the preferred practice of federal courts avoiding resolution of Con-

---

**19.** The one variation not relevant here is Ala. Code § 5–19–15 (1996) excludes periodic payments from a pension, retirement, or disability program from disposable income whereas the Federal Garnishment Limitation definition includes by 15 U.S.C.S. § 1672(a) periodic payments from a pension or retirement plan.

stitutional questions when resolution of a case is possible on other grounds. *See Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Construction Trades Council,* 485 U.S. 568, 577–578, 108 S.Ct. 1392, 99 L.Ed.2d 645 (1988); *United States v. Witkovich,* 353 U.S. 194, 201–202, 77 S.Ct. 779, 1 L.Ed.2d 765 (1957).

### B. Earnings By Any Other Name

#### 1. The In And Out

Having concluded that for Mr. Robinson disposable earnings are determined identically under the Federal Garnishment Limitation, State Garnishment Limit, and State Consumer Garnishment Limitation, whether Mr. Robinson's 401(k) contribution is a deduction from his earnings which is excluded from his disposable income presents an issue for which there has been little meaningful case law consideration and guidance. First, "amounts required by law to be withheld" include Mr. Robinson's portion of social security taxes, and the federal, state, and local withholding taxes due on his earnings. *Marshall v. District Court for the Forty-First-b Judicial District,* 444 F.Supp. 1110, 1115 (E.D.Mich.1978). Also not part of earnings are voluntary contributions of monies by an employee held in an individual retirement account. *See Aetna Casualty & Surety Co. v. Rodco Autobody,* 965 F.Supp. 104, 109 (D.Mass.1996). Lump sum severance payments by an employer are not earnings which are included for the federal limit on garnishment. *Id.* This holds for lump sum pension and retirement payments. *See, e.g.,* 15 U.S.C.S. § 1672(a) (Law.Co-op.1993); *cf. Kokoszka v. Belford,* 417 U.S. 642, 651, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974); *Aetna Casualty & Surety Co.,* 965 F.Supp. at 104; *Pallante v. Int'l. Venture Investments, Ltd.,* 622 F.Supp. 667, 669 (N.D.Ohio 1985). Income tax refunds are also not earnings shielded in part from garnishment. *Kokoszka v. Belford,* 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974). Beyond these, the law is not so easily applied.

At best, these cases show that courts have excluded from earnings as defined by 15 U.S.C.S. § 1672(a) one time or lump sum payments representing monies from earnings from more than one pay period. The result is these monies can be garnished on payment to the debtor without limitation by the Federal Garnishment Limitation. This is caused by these monies being completely left out of what is earnings under 15 U.S.C.S. § 1672(a).

Next are monies held out or taken from pay before its receipt by the employee which do not count as being required to be withheld by law under 15 U.S.C.S. § 1672(b). One in this category is support orders. *See Marshall,* 444 F.Supp. at 1115; *State Comptroller v. First Ala. Bank,* 642 So.2d 1349 (Ala.Civ.App.1993). The rationale for why these are not required to be withheld within § 1672(b)'s meaning is that these are a form of garnishment and to allow these to reduce disposable income before one has wages shielded from garnishment could leave the debtor with insufficient monies to pay his and his dependents day-to-day, week-to-week, and month-to month necessary living expenses, and leaves the debtor with less than what the statutorily determined minimum is to be. Such a result would defeat a main purpose for which the Federal Garnishment Limit was adopted. *See Kokoszka,* 417 U.S. at 650–651, 94 S.Ct. 2431. This grouping may be stated to be comprised of those reducing one's wages to repay an indebtedness owed to a third person.

Mr. Robinson's 401(k) plan contribution is clearly not in the category of one which reduces his disposable income to repay a debt due another. It may, however, be one not includable in § 1672(a)'s definition of "earnings." The absence of case law on this issue mandates consideration of the legislative intent behind adoption of the Federal Garnishment Limitation and review of non-garnishment laws. Before this, an understanding of a 401(k) plan will facilitate the discussion.

## 2. Plans, Trusts, & Taxes

A 401(k) plan is shorthand for what the Internal Revenue Code designates as a "cash or deferred arrangement." 26 U.S.C.S. § 401(k)(1) & (2) (Law.Co-op.1998). One qualified under the Internal Revenue Code to have contributions excluded from an employee's income subjected to federal withholding taxes requires, among other facets, that the covered employee be given the election to have the employer make payments as a contribution to a trust under the plan on behalf of the employee, or directly to the employee in cash. 26 U.S.C.S. § 401(k)(2)(A) & (B) (Law.Co-op.1998). If certain conditions are satisfied, a plan may provide for qualified nonelective contributions within 26 U.S.C.S. § 401(m)(4)(C) (Law.Co-op.1998)'s denotation: one which the employee may not elect to have paid to him or her in cash.

Furthermore for Internal Revenue Code qualification and taxation purposes, both employee elective contributions and qualified nonelective contributions are treated as employer contributions—not those of an employee. 26 U.S.C.S. § 401(k)(3)(D)(i) & (ii) (Law.Co-op.1998). More simply put, it does not matter whether the contributions made to Altec's 401(k) plan trust for Mr. Robinson were elective ones made on his behalf by Altec or required by his employer as qualified nonelective contributions. Both are treated as "elective deferrals." 26 U.S.C.S. § 402(g)(3) (Law.Co-op.1998). As regards Mr. Robinson, both are excluded from his taxable income for purposes of computing federal withholding taxes. This flows in part from 26 U.S.C.S. 402(e)(3) (Law.Co-op.1998) which contains this

> [f]or purposes of this title, contributions made by an employer on behalf of an employee to a trust which is a part of a qualified cash or deferred arrangement (as defined in section 401(k)(2)) or which is part of a salary reduction agreement under section 403(b) shall not be treated as distributed or made available to the employee nor as contributions made to the trust by the employee merely because the arrangement includes provisions under which the employee has an election whether the contribution will be made to the trust or received by the employee in cash.

This subsection also specifies that regardless of whether an elective or qualified non-elective contribution is made and until monies are actually distributed from the plan's trust, each is deemed one not distributed to the employee and is not to be treated as an employee contribution to the plan's trust. The significance is that for taxation of the employee, here Mr. Robinson, these types of contributions are not made part of his earnings. This is in conformity with how contributions to other qualified pension, profit-sharing, and stock bonus plans are treated, 26 U.S.C.S. §§ 401(a) and 402 (Law.Co-op.1998), and such plans which also include a cash or deferred arrangement. So too, for such contributions to an individual retirement plan pursuant to a simplified employee pension as defined in 26 U.S.C.S. § 408(k) (Law.Co-op.1998). 26 U.S.C.S. § 402(h) (Law.Co-op.1998).

What follows is that for contributions made to a 401(k) plan trust qualified for Internal Revenue Code purposes, these monies are not considered in determining federal withholding taxes. They are excluded from Mr. Robinson's current earnings.

### C. Earnings One And The Same

Since "earnings" for garnishment purposes under § 1672(a) of Title 15 of the United States Code is written as monies earned upon which, among others, federal, personal income taxes are withheld, § 1672(a)'s definition of earnings must be the same as that utilized for purposes of assessing how much must be withheld for federal taxation of an individual's income. This requires that what is excluded from income of an individual before determination of the amount of monies to be withheld for federal income taxes is likewise excluded under 15 U.S.C.S. § 1672(a) as

earnings for the Federal Garnishment Limitation restraint on garnishment. To conclude otherwise has far ranging, problematic outcomes.

### 1. The Problems

For one thing, exclusion from earnings for one purpose is contrary to their inclusion for another. This opposite treatment puts one in conflict with the other. It will also result in earnings for garnishment's limitations being greater than taxable income with the attendant outcome that disposable earnings under § 1672(b) being larger than wages, salary, or other compensation actually paid to the individual. Were this the case, the mathematic's of the limit on garnishment being a maximum of twenty-five percent of disposable earnings results in a person in Mr. Robinson's position receiving less than seventy-five percent of what his take home pay otherwise would be.

At the same time, a different holding means an employer must calculate earnings for withholding tax purposes and then recalculate them for Federal Garnishment Limitation usage. It suffices to say that in a world using variant numbers where supposed experts on the law—lawyers and judges—do not reach consensus on what are earnings and disposable earnings under the Federal Garnishment Limitation places the not so expert employer in an untenable position of not being certain how to compute these amounts and of facing the potential for liability for not paying to the Court the correct amount of monies which were to have been garnished.

Another factor favoring this holding is that it is a rule that permits avoidance of future litigation over whether a different treatment should be given to mandatory contributions to employer tax qualified plan trusts as distinguished from that granted elective or voluntary ones. The same may be concluded about whether a debtor who elected to defer before incurring debt should be treated different from one making the election after the debt exists. It as well dodges similar disputes when a 401(k) plan trust is a portion of another Internal Revenue Code qualified trust. In each instance whether separate or as part of another plan and trust, this consistent usage between Title 26 for tax purposes and Title 15 for garnishment steers clear of potential adverse ramifications which may arise from disparate usage between these two titles of the United States Code. Added to this is the fact that it is a straight forward rule with which garnishee-employers such as Altec can easily comply and not have to worry about erring in the calculation of the maximum amount subjected to garnishment.

An example of the difficulties inherent in any other outcome is the exclusion of a contribution to a qualified trust from earnings potentially subject to garnishment does not mean that they are not always excluded. To the contrary, § 1672(a) provides for the later inclusion of periodic payments from a pension or other retirement program. Also, lump sum distributions are fully garnishable. The added conformity arising from this Court's treatment of earnings is understood when one sees what happens if 401(k) plan contributions are not excluded from the earnings definition of § 1672(a): they potentially may be included as a portion of disposable earnings under § 1672(b) and garnishable at this time to the maximum extent of twenty-five percent, plus at a future date they are either (i) fully subject to levy if paid to Mr. Robinson as a lump sum or other nonperiodic payment, or (ii) subjected a second time to being garnished to the extent of twenty-five percent if paid as a periodic payment from a pension or retirement program for a total of 31.25% of such earnings [.25 + .25(.25)]. Such an outcome is not what was contemplated by the enactors of the Federal Garnishment Limitation.

### 2. The Intent

Other, further reasons support this interpretation. A compelling one is revealed by a purpose behind Congress' adoption of

the Federal Garnishment Limitation. In *Kokoszka v. Belford*, 417 U.S. 642, 650–651, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974), the Supreme Court of the United States stated

> there is every indication the Congress in an effort to avoid the necessity of bankruptcy, sought to regulate garnishment in its usual sense as a levy on periodic payments of compensation needed to support the wage earner and his family. . . .

Contributions to a 401(k) plan now are more frequently used in place of formerly more traditional retirement plans where most, if not all, funding was provided by the employer. Now that 401(k) and similar plans allow deferral of compensation for future uses such as retirement income, they are the equivalent of the current allocation of a stream of earnings over time necessary to support one at retirement, if a disability ensues, or on job termination. They also represent monies for the support of one's beneficiary on the death of the employee.[20] From this perspective, each contribution is an amount set aside to fund the current portion of an allocation of a future expense to be paid when one has a reduced or no other source of income. Under this view, it is recognition that one's day-to-day living expenses include making provision for a time when one may have a reduced or no source of income from employment. As such, it is an accrual of an expense and it meets the standard of being a periodic payment needed to support the wage earner and his family. It correspondingly contributes to another basis relied on for the adoption of the Federal Garnishment Limitation by helping to avoid future bankruptcies when one loses a job, becomes disabled, retires, or on the death of one who is the source of a beneficiary's income. It, therefore, facilitates accomplishing one purpose behind the enactment of the Federal Garnishment Limitation.

### 3. Exclusion Or Withheld

Lastly, one Alabama case involved how much should be a debtor's disposable earnings. In *State Comptroller*, the Alabama court faced a challenge to how the garnishee computed the funds remitted to the court using disposable earnings as set by 15 U.S.C.S. § 1672(b) as the basis of calculation of the permissible amount to garnish. In this case, there was no challenge to a state retirement contribution which was used as a reduction of earnings from which disposable earnings were calculated. *See State Comptroller v. First Ala. Bank*, 642 So.2d 1349 (Ala.Civ.App.1993). So for Mr. Robinson, it is at the least arguable that in Alabama the Altec contribution for him pursuant to its 401(k) plan is a deduction from disposable earnings required by law to be withheld.

Although this Court has concluded that a 401(k) contribution is not part of earnings under 15 U.S.C.S. § 1672(a) and, therefore, Alabama's counterparts, whether excluded from earnings or a reduction in earnings makes no difference to one as Mr. Robinson when a 401(k) plan trust is a qualified one under the Internal Revenue Code. If excluded from earnings and not subject to Federal Garnishment Limitation's coverage, these monies are not garnishable because they are held in a trust where the monies are exempt from creditors' claims. *See* 29 U.S.C.S. § 1056(d) (Law.Co-op.1998); *Guidry v. Sheet Metal Workers Nat'l. Pension Fund*, 493 U.S. 365, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990). Alternatively if a reduction in earnings,

---

**20.** Under 26 U.S.C.S. § 401(k)(2)(B) (Law.Co-op.1998), the restraints on when a plan participant or beneficiary may receive the distribution of his or her trust account balance are separation from service, death, or disability of the participant, termination of the plan, certain employer asset and subsidiary dispositions described in 26 U.S.C.S. § 401(k)(10), and for a profit-sharing or stock bonus plan—which may include a cash or deferred arrangement—the participant's reaching fifty-nine and a half, and for a profit-sharing or stock bonus plan containing a cash or deferred arrangement upon the hardship of the employee-participant.

**104**

these dollars are part of earnings shielded from garnishment by the Federal Garnishment Limitation definition of disposable earnings which is that used for the State Garnishment Limit of Ala.Code § 6–10–7 and the State Consumer Garnishment Limitation of Ala.Code § 5–19–15. The same occurs: the contribution amount is not garnishable.

For Mr. Robinson, the conclusion of this Court is that the contributions to his 401(k) plan trust are not subject to garnishment. The objections to their exempt status and assertions by the Bank of the contrary position are overruled.

### VII. The Constitutional Exemption— What Reduces That Which Was Claimed?

#### A. Forget The 401(k)

Having concluded that the contribution of monies to Altec's 401(k) plan trust for Mr. Robinson are not subject to garnishment, it follows that these monies need not be claimed as exempt under the Constitutional Exemption. They are not garnishable because shielded by another provision of federal law. *See* 29 U.S.C.S. § 1056(d) (Law.Co-op.1998); *Guidry v. Sheet Metal Workers Nat'l. Pension Fund,* 493 U.S. 365, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990). Under the facts of this case, this is precisely how Mr. Robinson has acted. He has not attempted to use the Constitutional Exemption to retain monies contributed to his employer's 401(k) plan trust. Notwithstanding the Bank's arguments, this Court need not say more about the 401(k) plan contributions and whether they count as an expense to reduce the value of one's property exempted under the Constitutional Exemption. *See Ralls v. Ala. Steel & Wire Co.,* 143 Ala. 620, 39 So. 369 (1905); *Weis v. Levy,* 69 Ala. 209, 211 (1881); *Ala. Conference v. Vaughan,* 54 Ala. 443, 445 (1875); *see also Roberts v. Carraway Methodist Med. Ctr.,* 591 So.2d 870, 872 (Ala.Civ.App.1991).

#### B. A Gift—Not A Countable Expense

The ultimate issue is whether monthly payments by Mr. Robinson on the Down Payment Loan of three thousand five hundred dollars allegedly obtained by Mr. Robinson's cousin is an expense which, when paid, count to reduce monies claimed exempt under the Constitutional Exemption below one thousand dollars. Even if the Court accepts Mr. Robinson's characterization of this transaction as a debt, the facts viewed in the light most favorable to Mr. Robinson are that what he did was give the three thousand five hundred dollars to his son-in-law and daughter. Gifts to persons not dependents of Mr. Robinson most certainly have not been recognized by Alabama's courts as an expenditure of exempted property which permissibly reduces the value of such property below that allowed by the Constitutional Exemption. *See Ralls,* 39 So. at 369; *Weis,* 69 Ala. at 211; *Vaughan,* 54 Ala. at 445; *see also Roberts,* 591 So.2d at 872. Rather in the context of this case, it is a disposition of property more akin to that which the *Weis* court believed should be disallowed: either lost or deteriorated in value due to fault by Mr. Robinson or in a fraudulent manner to obtain another exemption. *See Weis,* 69 Ala. at 211. The culmination of this disagreement is the monthly payments by Mr. Robinson on the Down Payment Loan did not and cannot reduce the value of property previously exempted under the Constitutional Exemption below the one thousand dollar amount.

### VIII. The Denouement

#### A. The Particulars

Although protracted in discussion and complex in analysis, the outcome may be succinctly stated. Mr. Robinson is entitled to stack his Alabama constitutional exemption utilizable for all forms of personal property, including wages, on top of or in addition to the procedural limits on a creditor's remedy to enforce a judgment, 15 U.S.C.S. § 1673(a), Ala.Code § 6–10–7, or Ala.Code § 5–19–15, to further thwart the

First National Bank of Jasper's efforts to collect the Judgment. Under Alabama's constitution, Mr. Robinson is the only one who may select what property is to be exempted by the Constitutional Exemption. The Constitutional Exemption may be reasserted by Mr. Robinson each time the value of property previously exempted under the Constitutional Exemption is reduced below one thousand dollars so long as the reduction is not caused by loss or diminution in value attributable to the fault of Mr. Robinson, by a fraudulent attempt to use property so as to be able to claim more property exempt, or by giving exempted property to a non-dependent.

In quantified terms, one thousand dollars of the monies received by the Court's Clerk from the garnishment process are to be paid to Mr. Robinson as exempt under the Constitutional Exemption. All residual monies are condemned and to be paid to the First National Bank of Jasper.

### B. The Generalities

The outgrowth of this ruling is not just that Alabama's residents receive what the Alabama constitution grants each. It is moreover that debtors with personal property of no value except wages, salary, or other similar compensation obtain the benefit of keeping at least seventy-five percent of disposable earnings by the restriction on the procedure of garnishment plus an additional one thousand dollar exemption which may be used to protect up to this amount of additional earnings from a creditor's reach. This is exactly the treatment accorded a debtor who has one thousand dollars of non-wage, non-salary, or similar non-compensation personal property.

This is in harmony with how Alabama's Constitution of 1901 was drafted and its prior, undistinguishable provisions in earlier constitutions were interpreted by Alabama's Supreme Court: one with tangible personal property should not receive more than a debtor whose only personal property of value is wages, a salary, or similar compensation. Any other holding does away with this constitutionally fabricated

equality among those who have the greatest need.